HANNAH DUREN *versus* ELISHA GETCHELL.

The general power to "manage" their "real or personal estate as if sole," given to married women by R. S., c. 61, § 1, includes that of submitting to arbitration a question of damages for the flowage of their separate lands, and of covenanting to abide the award.

A valid submission and award in writing, duly published, is sufficient to bar an action upon the original claim submitted.

It is unnecessary to aver a tender of performance, unless the award is made conditional upon the performance of certain acts by the party claiming the benefit of it.

A submission of "all claims and demands of every name and nature between the parties, embracing all questions as to damages for flowing lands, giving said referees power to fix and award a sum in full for said flowage, instead of the yearly damages established by the commissioners, and all claims, matters and difficulties between them," cannot be construed as a submission of prospective damages only.

Whether an award is void by reason of fraud in the party, or corruption, gross partiality or prejudice on the part of the arbitrators, is not a question of law to be determined upon a demurrer to a plea in bar setting out such award, but a question of fact.

Duren *v.* Getchell.

The mere facts, that the commissioners appointed in 1859 to assess the annual damages for flowage, reported the sum of $15 therefor, and the referees, in 1860, awarded $50 for the perpetual right of flowage, and that the same person was one of the commissioners as well as one of the referees, and concurred in both the report and award, are not sufficient to impeach the award for corruption, gross partiality or prejudice.

On Exceptions.

Debt on a judgment for flowing the plaintiff's lands in Raymond.

The writ is dated May 9, 1864, and substantially alleges that the defendant and one William S. Douglass, on and after April 1, 1856, built and maintained a dam across "Duran's brook," whereby plaintiff's lands were flowed; that, on April 1, 1859, plaintiff made complaint to the S. J. Court for the injury; that the respondents did not appear, but made default, whereupon one Jordan, Brown and Baker were duly appointed commissioners to determine the matter of said complaint; that a warrant was duly issued July 13, 1859, to said commissioners, who, after being duly sworn, notified and heard the parties, viewed the premises, estimated the yearly damage at $15, and made due return of their report Oct. 19, 1859; that said report was duly accepted at the October term, 1859, and judgment rendered thereon; that, on the day of the purchase of this writ, the defendant (Getchell) was owner and occupant of the mill and dam; that the said dam was and had been maintained to its original height by the defendant; and that said Getchell and Douglass had paid but $30 damages for two years, and no more.

The defendant admitted the facts set out in the declaration, and pleaded in bar an arbitration and award between the parties, since the rendition of the judgment, of the subject matter in controversy and all other matters in dispute between them, setting out the agreement for arbitration and the award, together with a profert of the award itself, and averring a tender of performance on Sept. 1, 1860, and a continued readiness to perform.

To this plea the plaintiff demurred, alleging that said judgment still subsists and remains unsatisfied; that said

reference and award were not legal and binding; that, at the time they were made, the plaintiff was and still is the wife of Samuel Duren, then living, who did not join with her in said reference, and that said reference was a contract which she, as a married woman, was incompetent to make, and on which she is not liable; that said defendant and Douglass did not comply with the conditions of said award by paying or offering to pay the sum therein awarded when the same became due and payable, according to the terms of said award; that one Brown, one of said referees, was also one of said commissioners; that the yearly damage for flowage was assessed by said commissioners on October 19, 1859, at $15, and the damage for the perpetual right of flowage, on May 1, 1860, as awarded by said referees, was $50, the said Brown concurring therein; that said reference was prospective merely, and did not embrace and include the unpaid yearly damage assessed by said commissioners; that said award was unfair and unjust, illegal in form and intent, and insufficient to bind the parties thereto.

The defendant joined the demurrer, whereupon it was overruled by the presiding Judge and the plea in bar adjudged good; to which ruling and decision the plaintiff alleged exceptions.

So much of the submission as is essential to an understanding of this case is as follow: —

"The undersigned hereby enter into an agreement as follows, to wit: —

"They select the following named persons as referees, to wit: — Samuel S. Brown and William Nason, (and, in case they cannot agree, said Brown and Nason shall choose a third,) and agree to submit to their arbitration all claims and demands between them, of every name and nature, embracing, among other things, * *

"All questions as to damages for flowing land by said Getchell and Douglass, claimed by Hannah Duren, giving said referees power to fix and award a sum in full for said flowage, instead of the yearly damages now established

Duren *v.* Getchell.

by report of commissioners. Also, giving said referees full power and authority to make and establish a line, now in dispute, between lands owned and claimed by said Getchell and Douglass and said Hannah Duren.

" The parties to this agreement are said Getchell and Douglass on one part, and Samuel Duren and Samuel Duren, jr., on the other part, as to all matters and claims between them, — and said Getchell and Douglass on the one part, and said Hannah Duren on the other part, as to all claims, matters and difficulties between them.

" Said referees shall have power to award costs to either party. Said parties agree to abide by and perform the award of said referees, which they shall make in writing, and said award shall be a final settlement of all matters and claims as above referred.

" Feb. 16, 1860. — Signed, sealed and delivered in presence of," &c. (Duly signed, sealed and witnessed.)

So much of the award as is pertinent, omitting formal parts, is as follows :   *    * — " Having viewed the premises when flowed, also when the water was entirely off the same, we award to said Hannah Duren the sum of $50, in full, for damages by flowing any and all land now in her possession, lying, &c. ; and that she shall accept said sum, and, upon the payment of which, she shall relinquish and totally abandon all claim to the yearly amount of damage before established by report of commissioners, for flowing her said land; which sum shall be due on the first day of September, A. D. 1860, the payment of which, by said Getchell and Douglass, shall entitle them, their heirs, or any persons legally claiming under them, forever to flow said Hannah Duren's land, as aforesaid, at any and all times a year, so much as the present dam will raise the water."

*P. R. Hall*, in support of the exceptions, elaborately argued the points alleged in the demurrer, citing, upon the point of the plaintiff's inability to enter into the submission, the following authorities. *Ex parte Thomas*, 3 Maine, 50 ; *Lane* v. *McKeen*, 15 Maine, 304 ; *Davis* v. *Millett*, 34

Maine, 429; *Ayer* v. *Warren*, 47 Maine, 217; *Howe* v. *Wildes*, 34 Maine, 566.

*J. W. Symonds*, for the defendant, cited Story's Plead., 165; *Knapp* v. *Clark*, 30 Maine, 244; R. S., c. 61, §§ 1 and 3; *Springer* v. *Berry*, 47 Maine, 330 and 337; *Smith* v. *Sweeny*, 35 N. Y., cited in Law Register for April, 1867; 1 Chitty's Plead., 928, note W, and cases cited *infra*.

BARROWS, J. — This case comes before us on exceptions to the overruling by the Judge at *nisi prius* of the plaintiff's demurrer to the defendant's plea in bar.

It appears, by the exceptions, that the action is debt on a judgment of this Court against defendant and one William S. Douglass, rendered upon a complaint for flowing plaintiff's land, which action was entered at April term, 1859, and then defaulted without appearence of the respondents, whereupon commissioners were appointed, who reported at the October term, 1859, a yearly damage of $15, upon which report judgment was rendered — and that only $30, or two years damages, have been paid by the defendant.

The defendant, admitting that, at the date of plaintiff's writ, (May 9, 1864,) he was the owner and occupant of the mill and dam, maintaining it to its original height, pleads in bar an arbitation and award between the parties since the rendition of the judgment, respecting the subject matter in dispute and all other controversies between them, setting out the agreement for arbitration and the award, accompanied with a profert of the award itself, and averring a tender of performance of defendant's duties under it, and continued readiness to perform. To this plea plaintiff demurs; defendant joins in demurrer and, upon the case thus presented, the presiding Judge ruled, adjudging the plea in bar good and overruling the demurrer.

1. It appears by the plea that plaintiff, at the time of the submission to arbitration upon which the defendant relies, was the wife of Samuel Duren, and hereupon the plaintiff contends that, being a *feme covert,* she is not bound by her

covenants to submit to arbitration and abide by the award, and is not thereby precluded from maintaining this suit.

The agreement for arbitration, set out in the plea, was made Feb. 16, 1860, was under seal, and was executed by Samuel Duren (husband of the plaintiff,) Samuel Duren, jr., Hannah Duren (the plaintiff herself,) Elisha Getchell the defendant, and William S. Douglass, his co-defendant in the complaint for flowage. By it, the parties executing it, agreed to submit to the arbitration of two persons named therein, " all claims and demands between them, of every name and nature, embracing, among other things," a suit then pending in this Court, wherein Getchell and Douglass were plaintiffs, and Samuel Duren and Samuel Duren, jr., were defendants, and all claims of damages and costs relating thereto, also the question of damages claimed by Hannah Duren against said Getchell and Douglass, for building a stone wall on land claimed by her ; " also all questions as to damages for flowing land by said Getchell and Douglass, claimed by said Hannah Duren, giving said referees power to fix and award a sum in full for said flowage, instead of the yearly damages now established by report of commissioners ;" also giving said referees full power to make and establish a line now in dispute between lands owned and claimed by said Getchell and Douglass and said Hannah Duren. The parties to the agreement are declared to be " said Getchell and Douglass, on one part, and said Samuel Duren and Samuel Duren, jr., on the other part, as to all matters and claims between them ; and said Getchell and Douglass, on the one part, and said Hannah Duren, on the other part, as to all claims, matters and difficulties between them. Said parties agree to abide by and perform the award which they shall make in writing, and said award shall be a final settlement of all matters and claims as above referred ;" and power is given to the referees to award costs.

It is urged, on the part of the plaintiff, that this is a mere executory contract, and that, as it was not a statute reference nor a reference under a rule of Court, the proceedings can-

not be maintained under the law authorizing a married woman to prosecute or defend suits at law or in equity for the preservation and protection of her property.

It cannot properly be said, although Samuel Duren was a party to this submission so far as it related to his own controversies with Getchell and Douglass, that he joined with his wife in the submission of her claims and difficulties with the same parties, for, as to these last, it is expressly declared that the parties are "said Getchell and Douglass on the one part, and the said Hannah Duren on the other part," and there are no words expressive of any intention on his part to join in the submission, so far as she was concerned therein. It cannot be said, however, to be in fraud of his rights, for he had none whatever in the premises. The complaint previously instituted was not prosecuted jointly with him, and the judgment rendered therein was in her name only. The question here is simply whether a married woman, as the law then stood, could make a valid submission to arbitration of claims growing out of her own separate property.

Perhaps a reasonable construction of § 3, c. 61, R. S. of 1857, empowering her "to prosecute or defend suits at law or in equity for the preservation and protection of her property, as if unmarried," would give her that power. For what is a suit but a prosecution of one's rights before some tribunal? And what is an arbitration but the hearing and determination of a cause between parties in controversy by a tribunal selected by the parties? The plain object of the statute was to enable the married woman to procure a final adjustment of claims growing out of her separate property, unembarrassed by the joinder or interference of her husband. Why should she not have the power to prosecute or defend those rights before a tribunal of her own selection?

But, however this may be, there can be no doubt that the power to make such an arrangement as this is included in the general power given to her in § 1, c. 61, which (as it stood when this submission was entered into) authorized a

married woman to " own in her own right real and personal estate, acquired by descent, gift or purchase, and to *manage*, sell, convey and devise the same by will, *as if sole*, and without the joinder or assent of her husband." To *manage* property is, (vide Webster's Dict.,) to conduct the concerns of it; and the power to manage it must of necessity include the power to make valid contracts respecting it, by means of which she could acquire rights against those dealing with her in relation to it.

The cases of *Ex parte Thomas*, 3 Maine, 50, and *Lane* v. *McKeen & ux.*, 15 Maine, 304, arose before the enactment of any of the statutes giving power to married women to hold, manage and dispose of their property, without being subject to the control or interference of their husbands, and simply enunciate the familiar doctrines of the common law in this respect.

Nor are the cases of *Howe* v. *Wildes*, 34 Maine, 566, *Davis* v. *Millett*, 34 Maine, 430, and *Ayer* v. *Warren*, 47 Maine, 217, in conflict with the doctrine here laid down. They decide merely that the statutes authorizing a woman to hold, lease, sell and convey her property, (which was as far as legislation upon this subject had then gone,) did not authorize her to enter generally into contracts on her own behalf, by which she would be personally bound, such as contracts for the purchase of property, either separately or in connection with her husband, or as surety for a third party.

The authority to *manage* her property, as if *sole*, was first conferred by the R. S. of 1857; and even that, while giving validity to such contracts as she might make in relation thereto, when exercising that power, could not be construed as giving her power to contract generally, as she was authorized to do by §§ 7 and 8 of c. 61, in certain cases, and now more fully by chap. 52, laws of 1866, which last declares all her contracts made for any lawful purpose valid and binding.

We are aware of no decision since the revision of 1857,

which countenances the repudiation of contracts made by her *respecting the management of her separate property.*

In Massachusetts, a married woman was held liable upon a promissory note, given for money borrowed to pay laborers for services upon a farm which she had purchased and was carrying on. *Ames* v. *Foster*, 3 Allen, 545.

So in New Hampshire, upon a note given for the price of neat stock purchased for the farm of which she was seized to her sole and separate use. *Bachelder* v. *Sargent*, 7 American Law Reg., 253, Feb., 1868.

It presupposes a much less change by virtue of statute enactment, to hold her bound by a submission to arbitration of claims growing out of her separate estate, and precluded from enforcing those claims except under the award of the arbitrators. In *Smith* v. *Sweeney*, 35 N. Y., where a wife permitted an arbitration, respecting damages to her land by the removal of earth and stones therefrom, to proceed in the name of her husband, she not being a party thereto, but knowing herself to be the party in interest, she was held bound by the award.

2. The objection, that Getchell and Douglass did not tender the $50, which they were required by the award to pay, until some days after the time when it was payable, cannot prevail.

A valid submission and award in writing, duly published, is sufficient to bar an action upon the original claim, which was submitted. Thenceforward the remedy of the party is not upon the original cause of action, but upon the covenant to perform the award. It is unnecessary to aver a tender of performance, unless the award is made conditional upon the performance of certain acts by the party claiming the benefit of it. "An award may be pleaded, although the time for performing it be not come, because the matter submitted *transit in rem arbitratam.* And, though the time of performance be come, yet, if arbitrament be pleaded with mutual promises to perform it, the plea is good without

showing that the defendant has performed his part; because an arbitrament is like a judgment, and the party may have his remedy upon it." Lawes on Pleadings in Assumpsit, (American ed., 1811,) 494.

3. Nor will the language of the submission admit of the construction contended for by the plaintiff's counsel, that it was the prospective damage only that was to be ascertained by the arbitrators. Especial pains were taken, as will be seen by reference to portions of the submission hereinbefore quoted, to make the arbitration a final adjustment of "all claims and demands of any name and nature; of all claims matters and difficulties," between the parties, with specifications of what the submission should be considered as "embracing *among other things;*" and in that connection the judgment here in suit is particularly referred to, and power is given to the arbitrators to award a gross sum to be paid by Getchell and Douglass, "*instead* of the yearly damages now established by the report of the commissioners." If the plaintiff had desired to contest the question whether the balance of her claim for past as well as prospective damages was considered by the arbitrators, she should have presented it in some other form than on a demurrer. That such a claim was a legitimate subject for arbitration, provided the parties saw fit to submit it with "all other claims, matters and difficulties," between them, to such a tribunal, cannot be doubted.

4. But the plaintiff's counsel argues that "an award may be set aside upon proof of misconduct, partiality, or fraud in procuring or making it, by a party or by the referees," and professes to believe that "evidence sufficient to show that it was procured by fraud, partiality, or collusion, may be had from a critical examination of the papers in the case." If the plaintiff had designed fairly to rely upon this as a ground for defeating the award, her proper course would have been to reply the fraud and bring that question to an issue to be decided in the light of evidence to be offered by both parties. In lieu of that, she asks us to de-

cide as matter of law, upon a demurrer in law, that there must have been fraud on account of the discrepancy between the conclusion reached by the arbitrators May 31, 1860, and that reached by the commissioners appointed to estimate the damage Oct. 19, 1859, and the further solitary fact that Samuel S. Brown was a member of both boards. It is to be observed that, in setting out the grounds of demurrer, no distinct charge of fraud or collusion is made; the averments in relation to this matter, being only that Samuel S. Brown, one of the two referees was also one of the committee appointed by the Court, — that the yearly damage was assessed on the 19th October, 1859, by the committee at $15, and the award of the arbitrators, made on the 31st of May following, (said Brown concurring therein,) gave only $50 for a perpetual right to flow the land, — and that the award was unfair and unjust, and illegal in form and intent.

Whether an award is void by reason of fraud in the party, or corruption, gross partiality or prejudice on the part of the arbitrators, is not a question of law to be determined upon a demurrer to a plea, but a question of fact to be submitted, if the parties desire it, to a jury, with an opportunity to the party whose award is impeached, to explain by testimony any circumstances on the face of the proceedings that might tend to excite suspicion of unfair practices.

But, if the question were to be determined upon the face of the papers, as the plaintiff claims, it is apparent that there is nothing to justify so grave a charge as is here made against the arbitrator. It is not to be overlooked that he was but one of three commissioners, (all appointed, it would seem, on the suggestion of the plaintiff, Getchell and Douglass not being represented at that hearing,) whose report may have been an average of their judgments, his colleagues on that board, largely exceeding him in their estimates, — and that, in the arbitration various matters were included, one of which was the settlement of the line between the lands of the plaintiff and those of Getchell and

Douglass there, the result of which may have materially affected the quantity of land, for the flowing of which the plaintiff was entitled to recover. There may have been ample grounds at the time the submission was entered into, for a review of the original judgment. In short, there are many hypotheses that would account satisfactorily for the discrepancy between the report and the award, without imputing corruption, partiality or prejudice to the arbitrator.

None of the grounds of demurrer being sustained,

*The exceptions are overruled.*

*Judgment for the defendant.*

APPLETON, C. J., WALTON, DANFORTH and TAPLEY, JJ., concurred.