## CHAMBERS *vs.* CROOK.

[BILL IN EQUITY TO ENJOIN JUDGMENT ON STATUTORY AWARD.]

1. *Partnership and individual transactions; settlement of.*—Upon the settlement of a partnership, when two partners are equal in interest, one-half of any balance of profit or loss is the extent of the liability of the one to the other, after having first applied the partnership assets to the exoneration of partnership liabilities; but as to individual transactions, the whole balance is the amount of the indebtedness of the one to the other.

2. *Equity will grant relief against a statutory award.*—A party is not precluded by the provisions of section 3160, (2721,) Revised Code, from going into equity for any relief which that court is authorized to grant. That section gives to an award no more conclusive or final effect, than to a judgment in the courts of common law, and any relief which a court of equity will grant against a judgment, will be granted against an award, and a statutory judgment thereon.

3. *Same.*—A party who obtains an award by fraudulent means, can be restrained in a court of equity after the rendition of a statutory judgment upon it, from collecting it, when the opposite party could not have made a successful defense in a court of law.

4. *Fraud on the part of one party to a transaction renders it voidable.*—As between the parties to a transaction, any advantage obtained by one party thereto by fraud, renders it voidable at the election of the other, seasonably expressed.

5. *Introduction of false testimony to sustain a claim.*—Where a party to an award introduces testimony before the arbitrators to sustain a claim, when in fact he had no such claim, and ought to have known that he had not,—*held,* that in law, such claim and his evidence thereof, was fraudulent.

6. *Judgment on award and its affirmance by supreme court no bar to equitable*

*relief on ground of fraud.*—The fact that the award and judgment thereon in the circuit court was affirmed by the supreme court, does not affect the right of the party to come into equity, to enjoin the judgment for the fraud of the person procuring it. The party had a right to exhaust his legal remedies before resorting to his equitable ones, so he acted in a reasonable time.

APPEAL from the Chancery Court of Wilcox.
Heard before Hon. J. Q. LOOMIS.

THE bill in this case was filed on the 11th January, 1867, by James A. Crook, against George W. Chambers, and sought to enjoin the collection of a judgment which the defendant had recovered against the complainant in the circuit court of Wilcox county, on a statutory award. According to the allegations of the bill, the parties being unable to settle their matters between themselves, consisting of partnership and individual transactions, agreed to submit them to arbitration, which was accordingly done on the 24th October, 1865, and the award thus made was entered up as the judgment of the said circuit court at the spring term, 1866. The complainant appealed from this action of the circuit court to the supreme court, and the case was affirmed by the supreme court at the June term, 1866.—See the case reported in 40th Alabama, page 239. The complainant, previous to the filing of this bill, filed another bill on the 21st September, 1866, for the same cause of action, and at the fall term, 1866, of said chancery court, this bill was dismissed for want of equity, but without prejudice to the filing of another bill by the complainant. The complainant, in his bill, amongst other things, "charged that upon said arbitration, the arbitrators were misled and deceived by the false and fraudulent statements of the said George W. Chambers, who was examined before said arbitrators on oath as a witness in the cause, in consequence of which said false and fraudulent statements on the part of said Chambers, and influenced and deceived thereby, the arbitrators, instead of awarding a large sum, to-wit: the sum of from twelve to fifteen hundred dollars to your orator, as due to him from said Chambers, which sum, your orator says is legally, justly, and equitably due to him from

said Chambers; they, the said arbitrators, deceived and misled as aforesaid, did allow and award to the said Chambers, as due from your orator, the large sum of three thousand eight hundred and seventy-three 66-100 dollars," &c.; and further, " that said Chambers made a false and fraudulent statement on oath, before the said arbitrators, and by which they were misled and deceived in this—the said Chambers swore that your orator agreed to give him fifteen hundred dollars for assisting him in making a sale of your orator's plantation to one J. F. Bettis, in the summer of 1860," &c. The defendant, in his answer, pleaded in bar of this action the judgment of the circuit court on the award, and its affirmance by the supreme court, and the former dismissal of the bill of the complaint by the chancery court for the same cause of action, and also demurred to the bill and moved to dismiss it for the want of equity. The chancellor refused to grant this motion, and on the hearing of the case upon the pleadings and testimony, granted the relief prayed for, perpetually enjoining the defendant from enforcing the collection of his judgment obtained on the award. The defendant appealed to this court, and assigned as error the several rulings of the court and the decree rendered.

MORGAN & LAPSLEY, for appellant.
PETTUS & DAWSON, and COCHRAN & DAWSON, *contra*.

BYRD, J.—The chancellor set aside the award and perpetually enjoined the judgment rendered thereon; but he has not assigned the reasons or ground upon which he founded his decree.

This case shows how much better it is for parties, in the first instance, to resort to the courts of the country, which are presided over by judges learned in the law, to settle up the transactions of a long existing partnership, and the individual dealings of the partners, which have become blended to any extent with such transactions, than to submit them to men who, perhaps, have neither experience in such matters, nor but a limited knowledge of the law applicable thereto. In this case it appears that the arbitra-

tors have blended partnership and individual transactions, and found a general balance and gave an award therefor, without considering that, as to partnership transactions, where the two partners are equal in interest, one-half of any balance of loss or profit is the *extent* of the liability of the one to the other, (upon a settlement of the partnership,) after having first applied the partnership assets to the exoneration of partnership liabilities, and as to individual transactions the whole balance is the amount of the indebtedness of one to the other. It is necessary to make this distinction in the future disposition of the cause.

2. The main question in this case is, whether the chancellor erred in setting aside the award and perpetually enjoining the judgment thereon. And this depends on whether there is equity in the bill; and if so, whether it is sustained by the evidence. In my opinion § 2721 of the Code makes an award conclusive between the parties, and it is final in courts of law, " unless the arbitrators are guilty of fraud, partiality or corruption in making it." It does not affect the right of a party to go into equity for any relief, which that court is authorized to grant. Nor does the statute give the award any more conclusive or final effect, than it does to judgments in the courts of common law; and it would seem to follow that any ground of relief which would in a court of equity be granted against a judgment, should be granted against an award and a *statutory* judgment thereon.

What, then, is the general doctrine on this subject? No accurate definition which will embrace all acts or omissions of parties can be given of the term *fraud*, in the extensive signification in which it is used in courts of equity. It is said to be more odious than force; and that it vitiates every transaction as against the party guilty of it. A party who fraudulently obtains an advantage of another in any transaction cannot enforce it, if resisted; and if the latter acts with reasonable diligence, it may be avoided, and in many cases it is absolutely void in the absence of any diligence to avoid it on the part of the party defrauded. It is, perhaps, impossible to lay down any invariable rule on the subject, which would clearly define and distinguish the

line which divides void and voidable fraudulent transactions, or those cases in which all courts will hold them void in any proceeding, and those in which the party defrauded must avoid the transaction by a direct application to a court of competent jurisdiction.

It is in the latter class of cases that the question of diligence so often arises. In this case, under the circumstances in which it is presented, we do not think that the appellee is chargeable with any *laches* or want of diligence which should bar his right to relief, if he is entitled to any under the pleadings and evidence. And this we think will appear from the further consideration of this cause. We have no doubt that a party who obtains an award by fraudulent means, can be restrained in a court of equity, after the rendition of a statutory judgment upon it, from collecting it, where the opposite party could not have made a successful defense in a court of law. This court has held in a case between the same parties, that the court of common law committed no error in rendering a judgment on the award in this case. Section 2710 of the Code authorizes a judgment to be entered up in " the proper court," and that without requiring any notice to the party against whom the award is made, that a motion will be made to enter such judgment; and section 2721 makes the award conclusive as before shown. We are of opinion, that when the submission and award is substantially in compliance with the provisions of ch. 9, tit. 2, pt. 3 of the Code, it is the duty " of the proper court" to enter judgment upon it; and the party against whom the award is found can make no defense at law, *unless* he can prove that the " arbitrators are guilty of fraud, partiality or corruption in making it;" but, upon this question it is unnecessary to make any decision. For, in this case, it is not the fraud of the arbitrators, but of the appellant, in procuring the award to be made, which is alleged as the ground for relief. And the acts which are set out as fraudulent, are set out with sufficient certainty and particularity to meet the requirements of the rules of pleading.—*French v. Garner et al.*, 7 Por. 550 ; *Kennedy's Heirs and Exr's v. Kennedy's Heirs*, 2 Ala. 571. And we are satisfied that the bill contains equity, and hence the chan-

cellor properly overruled the demurrer.—1 Story Equity, § 186 to 195; 2 ib. §§ 1452, 1522; 2 Ala. 571; *Wyatt v. Ayres et al.*, 2 Por. 157; *Townsend & Milligan v. Cowles*, 31 Ala. 433; *Cowan and Wife v. Jones*, 32 ib. 317; *Strong v. Beroujon*, 18 ib. 168; *Kennedy's Heirs v. Kennedy's Heirs, supra*; *Bulkley v. Stewart*, 1 Day, 132; *Buckley v. Starr*, 2 ib. 552, in point; *Brown v. Green et al.*, 7 Cow. 536; *Ormsby's Admr's v. Bakewell et al.*, 7 Ohio, 98; Cald. on Arb. 276, note 1, and authorities there cited; *Head v. Muir et al.*, 3 Rand. 122; *Mock v. Candiff*, 6 Por. 24.

There are authorities which hold that an award can not be impeached for fraud of the parties in obtaining it. But this award was made under a statute, and we prefer to follow the authorities cited, which are in conformity with the general principle that, as between the parties to a transaction, any advantage obtained by one party thereto by fraud, renders it voidable at the election of the other, if in a reasonable time he makes such election. The fraud vitiates the whole award, as in this case it is an entire one, and as shown in evidence, the partnership and individual transactions are not capable of separation, even if in a case of fraud by one of the parties it is allowable to set it aside in part.

3. Without entering into a discussion of the answer and evidence of the appellant, when compared with the evidence of the disinterested witnesses, we are satisfied that their evidence is sufficient to overcome the denials of the answer and the evidence introduced by appellee, upon the claim for the item of $1,500, as compensation for services in selling the land of appellee to Dr. Bettis; and whether appellant supposed he was making an honest and just claim to that sum before the arbitrators, we are satisfied upon the evidence that he had no such claim, and that *he ought to have known he had not;* and, consequently, we must hold that *in law*, such claim and *his* evidence thereof before the arbitrators, was fraudulent. It is true that one Williams testified before the arbitrators to the correctness of this claim, but it cannot be seen from the evidence that they allowed it upon his evidence alone. The appellee denied its correctness—the appellant testified to it before the arbi-

Chambers v. Crook.

trators, knowing, or he ought to have known, it was unjust, if we are to believe the witnesses who have testified to his admission, made to them before the trial by the referees.

And it appears from the record that the appellant admitted that eleven persons would prove they were acquainted with the general character of the witness Williams—"that that character is bad, and that from their knowledge of his general character, they would not believe him on his oath." This is not referred to as any ground for relief, but under all the evidence in this case, it is, at least, a circumstance to be considered in coming to a conclusion as to the means and instruments resorted to by appellant in making out this claim before the arbitrators. If so many persons in the neighborhood knew the characacter of the witness, it seems the party who *used* him should have known something of it. The Code allows parties to arbitrations to be witnesses, and our statute now authorizes parties to be witnesses in all suits, except in a few specified cases; and the temptation even to a good man is not without influence to make his testimony as favorable to himself as his conscience will allow; and a bad man will have a wider range to indulge his selfishness; both may be strangers to the jury; and, as often occurs, the less conscientious will make a better appearance before the jury, and very unjust verdicts will be rendered, which subsequent events or testimony would expose. Now, if a party, by his own false and fraudulent testimony or pretenses, procures an unjust judgment against another, it will be some restraint on the unscrupulous, and even those who would be just, but for the temptation to make out a demand, or to disprove it when made, or to secure an advantage which his high character might give him with a jury, if courts of equity will grant relief when a palpable case of injustice occurs by the false and fraudulent testimony of a party. If this cannot be done, the ends of justice will be perverted, and what was intended as a *shield* against fraud, will become its most potent weapon. Besides, when it is known that courts of equity will give relief against judgments obtained through the false and fraudulent testimony of a party who knew it to be so, or ought to have known

it, it will make parties more cautious and correct in their evidence, and will thus promote the ends of truth and justice.

Upon the evidence in this case, we have come to the conclusion that appellant secured the allowance of the claim for $1,500 under false and fraudulent pretenses and testimony. When his answer and his evidence are compared with the other testimony in the cause, leaving out the deposition of appellee, we are satisfied that under the rules of law, they are not entitled to much, if any, weight. It is unnecessary to look at any of the other points made by the bill, as this one is sufficient to have authorized the chancellor to have set aside the award and enjoin the judgment.

The fact that the latter was affirmed by the supreme court, even taken in connection with the other averments of the plea of appellant, which are sustained by the evidence, does not constitute any bar to the remedy sought by the bill. The appellee had the right to try his legal remedies before resorting to his equitable ones; and which he did within a reasonable time, after exhausting the former without success. The affirmance of the judgment on the award by this court, did not of itself affect any equitable relief to which appellee was entitled.

4. The chancellor made no decree in favor of the appellee, as to the matters contained in the ninth section of the bill, and the claim of Thomas W. Evans; and although counsel for appellant have argued that there is no equity in the bill in that respect, yet the court made no decree thereon, and the appellant cannot assign error and claim a reversal therefor.

All the questions noticed on the brief of counsel for appellant have been disposed of, and according to an established practice we will not consider the assignments of error, not insisted on in the brief.

It results that the decree of the chancellor is affirmed.