## Richmond.

CORBIN AND ALS. V. ADAMS AND ALS.

December 15th, 1881.

1. EQUITABLE JURISDICTION—*Submission annulled.*—Testator willed his property to four of his ten children. These four had claims against his estate for services, and their consent to an order vacating the will was given upon condition that their claims be paid out of the estate. The amount was to be ascertained by three disinterested persons selected by the parties. The arbitration did not occur, because the parties did not agree on the arbitrators, mainly by the fault of others than the claimants. The latter then considering the agreement ended, and the order vacating the will a nullity, filed their bill asking for an issue *devisavit vel non.* The verdict was for the will. It was approved, and the agreement was annulled by the court.

HELD :
> The will being established, and the claimants being the only devisees and owners of the estate, there was nothing to arbitrate, and the court did right in annulling the agreement in order to terminate the litigation.

2. *Submission not consummated.*—Agreement to arbitrate is no bar to suit at law or in equity, and no foundation for decree of specific performance.

3. *Submission—Breach—Remedy.*—Only remedy for refusal to comply with agreement to arbitrate is by action for damages, the measure of recovery being the costs and expenses incurred, unless there be a bond with penalty in nature of liquidated damages.

4. *Submission—Award.*—After the agreement has been consummated by an award, it is different, the award binding the parties, and only impeachable on grounds which would invalidate any other judgment.

Appeal from decree of circuit court of Pittsylvania county, in suit wherein Nannie, wife of James Adams, by, &c., and said Adams were plaintiffs, and Thomas, William, Benjamin, Winney H., James M., and Bettie W. Corbin, Jeremiah White and Susan, his wife, George Adams and

Sarah J., his wife, and Henry R. Shelton and Mary Ann, his wife, were defendants.

Jameson Corbin, by his will, gave all of his property to four of his ten children—to-wit: Nannie (the plaintiff), Winnie, Bettie, and James. By a writing executed 18th November, 1878, by all the defendants and the plaintiff, James Adams, it was agreed that the will should not be probated; that the claims of the four legatees for services rendered their father should be ascertained by three disinterested persons and paid; and that the balance of the decedent's estate should be equally divided among all his children. The county court made an order refusing to admit the will to probate, and committing the estate to the sheriff of the county. No arbitrators were ever appointed, chiefly by the fault of those not legatees; and Nannie Adams, one of the latter, and her husband, filed their bill to establish the will. The verdict on the trial of the issue *devisavit vel non,* was in favor of the will. The circuit court approved the verdict, and afterwards annulled the agreement. From the decree Thomas Corbin, H. R. Shelton and Mary Ann, his wife, William Corbin, Benjamin Corbin, Susan White, widow of Jeremiah White, deceased, George Adams and Sarah J., his wife, obtained an appeal.

*Treadway & Scruggs,* and *R. H. Treadway,* for the appellants.

*John Gilmer* and *J. L. Treadway,* for appellees.

STAPLES, J., delivered the opinion of the court.

That the consent of the appellees to the order vacating the will of Jameson Corbin was given upon condition that their claims against the testator should be paid out of the assets of the estate, is not seriously questioned by the appellants. It is proved by the agreement of the 18th of

November, 1878, and by the testimony of witnesses. The amount of compensation to which the appellees were entitled for their services was, however, to be ascertained and settled by three disinterested persons, mutually selected by the parties. The commissioner to whom the whole matter was referred, upon a careful survey of the evidence, reported that the arbitration did not take place because the parties failed to agree upon the arbitrators. And although there is some conflict among the witnesses, the great preponderance of evidence shows that this failure was due mainly to the appellants, or rather to such of them as actually participated in the negotiation.

It would seem that these parties, having obtained the consent of the appellees to the vacation of the will, cared very little about the arbitration, and were disposed to throw every obstacle in the way of the proposed adjustment. Under such circumstances the appellees might very justly consider the agreement of the 18th of November ended, and the order vacating the will a nullity. They accordingly filed their bill in the circuit court, asking for an issue *devisavit vel non.* Upon the trial the jury found the paper writing to be the true last will and testament of Jameson Corbin. This verdict was approved by the court, and no exception was taken to its ruling.

The appellants now insist, however, that the agreement to arbitrate is in full force and ought to have been carried into execution by the circuit court. In answer to this, it might be sufficient to say, that upon a bill asking for an issue *devisavit vel non,* when the verdict of the jury is rendered, ordinarily the functions of the court are ended, and the appellant's remedy upon the submission, if any they have, must be asserted in some other forum.

But, conceding that the court might go on to make such decree as would terminate the litigation, it is very clear that the will having been established, there was nothing

left to arbitrate. The appellees being the devisees and owners of the estate under the will, have of course no longer any claim for services rendered the testator.

It has been already seen that the parties failed to agree upon the arbitrators, and that this was due mainly to the conduct of the appellants. Having defeated the arbitration, they cannot rely upen the submission as an estoppel. But if it appeared that the appellants were not in default, and were willing to proceed, with the arbitration, the courts cannot enforce a mere agreement to submit.

Such an agreement, not consummated by an award, is universally held to be no bar to a suit at law or equity; nor can it be the foundation of a decree for specific execution. In its very nature it must rest on the good faith and consent of the parties concerned. Parties litigant cannot by such arrangements oust the jurisdiction of the courts or deprive themselves of the right to resort to the legal tribunals for the settlement of their controversies. After the arbitrators have acted and rendered an award the case is very different. Their decision is binding upon the parties, and can be successfully impeached only upon grounds which would invalidate any other judgment. This distinction between a mere agreement to submit and a submission consummated by an award is universally recognized by the authorities. Morse on Arbitration, 79, 90. One of the leading cases on the subject is that of *Tobey* v. *The County of Bristol et als.*, 3 Story, 822, where the whole subject is exhaustively considered and many decisions cited by Mr. Justice Story. The only remedy for the party aggrieved is by an action for damages growing out of the breach of the submission.

The measure of recovery in such cases is ordinarily the costs and expenses incurred in and about the submission, unless, indeed, there be a bond with a penalty in the nature of liquidated damages. Morse on Arbitration, 239.

The difficulty in enforcing an agreement to arbitrate is greatly increased where, as in the present instance, the arbitrators have not been agreed upon and the parties refuse to name them. In such a case the court can have no authority of itself to appoint the arbitrators, or to compel the parties to do so. That would be, as was said by Sir John Leach in *Agar* v. *Macklin* (2 Simon and Story's Reports, 418, 423), to bind the parties contrary to their agreement. The considerations which support this view are so obvious and so numerous, it would be a waste of time to fortify it by authority or discussion. The result is that the circuit court is plainly right in its decree, which must be affirmed.

DECREE AFFIRMED.