W. E. JOHNSON, *Appellant*, v. D. S. WELLS, *Appellee*.

Opinion Filed Nov. 21, 1916.

Petition for Rehearing Denied Dec. 12, 1916.

1. Sections 1651-1658, General Statutes of Florida, 1906, make provision for the submission of any controversies by the parties interested to arbitration either before or after suit and when the submission has been made in substantial compliance with the statute, the award of the arbitrators has the force and effect of a judgment, and may not be impeached except in an appropriate proceeding upon sufficient grounds.

2. A bill in chancery to set aside an award is not demurrable for want of equity which alleges that the award was obtained by the fraud of one of the parties to the arbitration who was complainant's copartner in business, and the fraud was committed by the defendant complainant copartner by making false entries in the books of the copartnership to which complainant did not have access and was ignorant of the existence of the fraud and that the books containing the

fraudulent entries were submitted to the arbitrators by the defendant and the award was based largely upon such false entries which were against complainant's interests.

3. Mistakes of arbitrators consisting in their opinion of erroneous conclusions of the facts are not such mistakes as will vitiate an award under the statute.

Appeal from Circuit Court, Hillsborough County; F. M. Robles, Judge.

Decree reversed.

*Lunsford & Devane,* for Appellant;

*J. T. Watson, Jr.,* for Appellee.

ELLIS, J.—D. S. Wells exhibited his bill of complaint in the Circuit Court for Hillsborough County against W. E. Johnson, alleging in substance, that complainant and defendant formed a co-partnership in January, 1911, for the "purpose of doing a general real estate business to buy, sell and trade in real and other property and to sell for others on commission, said parties to share equally in all expenses and profits of said business." It was also alleged that the parties agreed that the co-partnership "would engage especially in the effort to sell certain real estate belonging to the complainant." The bill alleges that the co-partnership was dissolved in May, 1913, and that differences having arisen between the parties in the "matter of the respective amounts due and owing as between the partners to themselves and to the partnership," it was agreed to submit such difference to arbitration, which was done under the provision of the statute in such case provided. The copy of the agree-

ment to arbitrate is attached to the bill as Exhibit "A" but not asked to be made a part of the bill.

The bill proceeds to allege that the agreement to arbitrate was carried into effect, evidence was submitted to the arbitrators who upon considering the same made their award and the same was entered of record. The award, which was in writing, is attached to the bill as Exhibit "B." There were two other persons to the agreement to arbitrate who were named L. F. Strouse and W. S. Rouse. Complainant further alleges that the arbitrators awarded judgment against him in favor of the defendant in the sum of three hundred and twenty-eight dollars and twenty-two cents and against complainant in favor of L. F. Strouse and W. R. Rouse in sums named in the award; that complainant had paid the cost bills including stenographer fees, which are attached to the bill as Exhibits "C" and "D." The bill of complaint then attacks the award in so far as it was in favor of defendant upon the ground that the evidence submitted to the arbitrators by the defendant was "false, incorrect and fraudulent," and particularizes in what respect the evidence submitted, was of that character. From these allegations it appears that the defendant kept the book of accounts for the partnership exclusively during the time they were in business together; that this book of accounts was submitted to the arbitrators as evidence of the transactions of the partnership and as containing the record of the accounts and moneys due and owing as between the complainant and the said W. E. Johnson under the said co-partnership relation; that the book of account contained many entries that were "fraudulent, incorrect and untrue," which were set forth in the bill. That at the time the award was made complainant was sick and had no opportunity to make the investigations

which were subsequently made that resulted in disclosing the "fraudulent and false testimony as rendered by the said W. E. Johnson upon the hearing before the said arbitrators;" that the complainant did not have access to the books of account from which he had obtained the knowledge of such "false and fraudulent" testimony on the part of Johnson until about June 2, 1914. It was also alleged that the said book of account failed to show certain transactions in which complainant paid out certain moneys for the co-partnership for which he was entitled to credit, and did not contain a true record of certain moneys, properties and effects received by the co-partnership; that the arbitrators did not consider the many errors, discrepancies and mistakes contained in said account book which were in fact overlooked by them in rendering their award, and they had in writing signed by two of them admitted that they made a mistake in rendering the award. The bill alleges that upon a just and true settlement of the accounts of the co-partnership business including all matters which were considered or should have been considered by the arbitrators, as well as such matters as have arisen since pertaining to the co-partnership, it will appear that there is a large balance due from the defendant to the complainant. The bill prays that an accounting be had between the parties of all the co-partnership dealings and transactions, that the same be fully adjusted and the respective rights of the complainant and defendant ascertained, that the award be set aside in so far as the same adjudges or awards any sum of money in favor of the defendant against the complainant, for an injunction against the issuing of any process upon the judgment of the arbitrators and for general relief and subpoena.

The Chancellor granted a temporary injunction re-

straining the defendant from enforcing the award pending the further order of the court.

The defendant demurred to the bill of complaint upon the grounds that the bill was without equity; that the matters set out in the bill had been adjudicated; that the bill merely sought to have a judgment set aside upon newly discovered evidence and complainant had an adequate remedy at law which he had lost by laches. The demurrer was overruled. The defendant then moved to dissolve the temporary injunction upon the same grounds as contained in the demurrer, and upon the further ground that there was no affidavit or other sworn evidence from the complainant or any other person that the allegations of the bill were true. This motion was also overruled. These orders constitute the basis for the first, second and third assignments of error.

The defendant answered the bill of complaint, admitting the co-partnership, dissolution and arbitration, but denied all allegations of fraud on his part, or mistakes on the part of the arbitrators, and averred the correctness of the account book and that the complainant had sufficient opportunity to examine it. There was a replication to this answer, and upon motion of complainant a special master in chancery was appointed to take the testimony of the parties and report the same to the court, together with his findings thereon. The testimony was taken and reported by the master, upon consideration of which and the pleadings the Chancellor rendered a final decree setting aside the award, making the temporary injunction permanent and decreeing that the defendant, W. E. Johnson, pay to the complainant, D. S. Wells, twenty-four hundred and seventy-nine dollars and fifty-nine cents, "representing the sum of money found by the court to be due and owing to the said D. S.

Wells from the said W. E. Johnson upon the accounting as had and taken between the parties in the course of this proceeding." From this decree the defendant appealed. The remaining seven assignments of error rest upon this decree.

The statutes of this State make ample provision for the submission of any controversy by the parties interested to arbitration either before or after suit, and provide for the same being made a rule of court and the awards to have the force and effect of judgments. These statutes also make provision for a method of setting aside such awards by motion on the ground of fraud, corruption, gross negligence or misbehavior of one or more arbitrators or umpire who may have signed the award or of evident mistake acknowledged by the arbitrators or umpire. Secs. 1651-1658 Gen. Stats. of 1906, Compiled Laws of 1914.

The pleadings in this case show that the controversy was submitted to arbitration by the parties; that the arbitration was made a rule of court and all the requirements of the statute observed to give to the award the force and effect of a judgment. At least the record does not show to the contrary and counsel have treated the arbitration in their briefs as if the statute had been in all respects complied with.

Treating the arbitration, therefore, as having been submitted in substantial compliance with the statutes, we will consider the question presented by the demurrer and motion to dissolve the temporary injunction, viz.: May a statutory award be set aside and annulled by a court of chancery upon the grounds, first, that one of the parties to an arbitration had sworn falsely before the arbitrators in his own behalf and produced as evidence a book of accounts containing false and fraudulent entries of part-

nership transactions between himself and the other party to the arbitration? Second, that one of the arbitrators and the umpire acknowledged in writing that they "made a mistake in rendering" the award? Neither one of these questions has ever been considered by this court. The settling of disputes and controversies by arbitration was recognized at common law. It was a method by which parties to a controversy could submit the matters in dispute to persons of their own choosing, whose decision or award was binding upon the parties, but the rights of the successful party could be enforced only by a suit at law. By a common law arbitration, therefore, the only gain was the substitution of the definite findings of the award as the basis of a suit in place of the unsettled rights of the parties. The courts regarded the matters submitted as concluded by the award, and in an action thereon would not review the merits of the arbitrators' findings. 2 R. C. L. p. 352; Williams v. Branning Mfg. Co., 153 N. C. 7, 68 S. E. Rep. 902, 21 Ann. Cas. 954; 5 C. J. 20.

Under the statutory provisions the parties to the controversy submit the disputed matter to jurors of their selection whose decision or award is substituted for the judgment of the established courts and by so doing avoid the delay and expense of litigation. The award, under a statutory submission, which is regular on its face is conclusive upon the merits of the controversy submitted and is a final adjudication until impeached in an appropriate proceeding upon sufficient grounds. 5 C. J. 160; Williams v. Branning Mfg. Co., supra; 2 Am. & Eng. Ency. Law, p. 794. It is a final adjudication by a court of the parties' own choice and is entitled to the respect due to the judgment of a court of last resort. 3 Cyc. 728; Edmundson v. Wilson, 108 Ala. 118, 19 South. Rep. 367; Harris v. Hanie, 37 Ark. 348; Boston Water Power Co.

v. Gray, 6 Met. (Mass.) 131; Wilson v. Wilson, 18 Colo. 615, 34 Pac. Rep. 175; In re Castle-Curtis Arbitration, 64 Conn. 501, 30 Atl. Rep. 769; Hostetter v. Pittsburgh, 107 Pa. St. 419; Corbin v. Adams, 76 Va. 58; Walker v. Walker, 60 N. C. 255; Schmidt v. Glade, 126 Ill. 485, 18 N. E. Rep. 762; Perkins v. Giles, 50 N. Y. 228.

The reason for the high degree of conclusiveness which attaches to an award made by arbitrators is that the parties have by agreement substituted a tribunal of their own choosing for the one provided and established by law, to the end that the expense usually incurred by litigation may be avoided and the cause speedily and finally determined. To permit the dissatisfied party to set aside the award and invoke the judgment of the court upon the merits of the cause would be to destroy the purpose of the arbitration and render it merely a step in the settlement of the controversy instead of a final determination of it.

In this case, however, it is contended that the award was obtained by the fraud of one of the parties to the arbitration who was the co-partner of the appellee, the other party to the arbitration. The appellant, who was the co-partner of appellee, had charge of the books of account belonging to the partnership, and so it is alleged made false entries therein which resulted in making it appear that the appellee Wells was indebted to the appellant Johnson, when in fact the accounts of the co-partnership honestly and accurately kept would show that Johnson was indebted to Wells. If this allegation is true, then the appellant obtained by his fraud an advantage over his co-partner. The appellant owed to his co-partner the highest degree of fair and honest treatment; their relations demanded mutual confidence and trust, and for one to abuse the relation by the practice of fraud upon the

other to the former's advantage is to be guilty of a most odious form of dishonesty. These books of account, which the appellant knew to contain fraudulent entries of his own making against his co-partner, were submitted to the arbitrators by appellant and formed the basis of the award. We think the fraud as alleged in the bill of complaint was sufficient to vitiate the award. It is sufficiently charged in the bill of complaint and admitted by the demurrer. Under the circumstances of the case we cannot say that the appellee was guilty of laches in bringing his bill to set aside the award. There was no reason why he should have suspected the good faith and honesty of his co-partner; he had a right to trust him and to depend upon his honesty and faithfulness in keeping the partnership accounts. The appellee was ill for a long period of time after the award was rendered and did not have access to the books until June, 1914, when he began his investigations and brought his bill in July of that year. The bill contains repetitions and argumentative matter and much that is unnecessary, and is by no means a perfect statement of the complainant's equity, but we think there may be gathered from it that the defendant Johnson and complainant Wells were co-partners; that Johnson kept the books and made the false entries without his co-partner's knowledge; that Wells did not have access to the books and did not know of the existence of the fraud until after the award. The fraud as alleged in the bill vitiated the entire award so far as the appellant and appellee were concerned. See Chambers v. Crook, 42 Ala. 171; Brown v. Green, 7 Conn. 536; 2 Story's Equity, §1452; 2 Greenleaf's Evidence, 78; Craft v. Thompson, 51 N. H. 536; Muldrow v. Norris, 2 Cal. 74; Elkins v. Page, 45 N. H. 310; Duren v. Getchell, 55 Me. 241, text 251; Hurdle v. Stallings, 109 N. C. 6, 13 S. E. Rep. 720;

Emerson v. Udall, 13 Vt. 477. We are mindful of the decisions in this country supporting the rule that a judgment will not be set aside by a court of equity because it was founded on perjured testimony or a fraudulent instrument, nor for any other matter that was actually presented and considered in the judgment assailed, (United States v. Throckmorton, 98 U. S. 61; Camp v. Ward, 69 Vt. 286, 37 Atl. Rep. 747), but we think that the circumstances of this case as disclosed by the bill differentiate it from those cases in which the rule was applied. If a judgment was obtained upon false testimony or a fraudulent instrument and the parties were heard, the evidence submitted to and received consideration by the court, then it may be said that the matter has been actually tried, or was so in issue that it might have been tried and the parties are estopped to set up an intrinsic or direct fraud to vitiate the judgment, because the judgment is the highest evidence and cannot be contradicted by the parties to it. SHAW, C. J., in Greene v. Greene, 2 Gray (Mass.) 361, text 366.

But in this case there was, according to the allegations of the bill of complaint, a set of books supposed to contain correct records of partnership transactions, which set of books was kept exclusively by one of the partners, who in order to defraud his co-partner, made false and fraudulent entries in the accounts, omitted to credit his partner's account with many items in the divers partnership transactions which should have been credited to that account, so juggled the accounts that profits were made to appear as liabilities and what should have appeared as credits on his partner's account were made to appear as debits; that this state of affairs was unknown to the com-

plainant, who relying upon his faith in his partner's honesty was led to believe that the books of account were correctly and honestly kept. That when the books were submitted to the arbitrators complainant did not know of the fraud that had been perpetrated upon him by his co-partner and did not discover it until the award had been made and he had examined the books. Although it may be said that this was a case in which fraud existed in the matter on which the judgment was entered, we cannot agree that under the circumstances, as alleged in the bill, it can be said that the question of whether the books of account were false, the entries therein fraudulent, was ever considered by the arbitrators, nor that the complainant had the opportunity of presenting the question because being misled by confidence in his co-partner, the complainant's suspicions were never aroused until the award was made. He cannot be said to have been negligent, nor even careless, in a slight degree. The dissolution of the co-partnership was by mutual consent, the co-partners amicably agreed to submit the matters pertaining to their business to persons of their choosing in order that the partnership affairs might be speedily settled and their accounts correctly adjusted with as little cost as possible. The books of account were produced by the defendant; these books contained entries which the defendant, according to the bill, knew to be false and which the complainant believed to be correct. So far as the case made by the bill is concerned, it is one in which the defendant made up and presented to the arbitrators a wholly factitious statement and one known by him to be such, and without which he would have had no claim against the complainant; that this statement and the consideration of it by the arbitrators was made possible only by complainant's ignorance of the false entries in the books of ac-

count and his confidence in the other's honesty and fairness, and on this the defendant Johnson acted to his own advantage. We think the demurrer and the motion to dissolve the temporary injunction were properly overruled therefore.

We have carefully examined the evidence but have failed to find the slightest proof of the essential allegations of the bill on which the complainant's equity rests. There is evidence that the books of account contained many errors, that the books appear to have been inaccurately kept, but there is nothing whatever to show that the complainant never had access to the books during the existence of the co-partnership, that he had no opportunity to discover the errors which he claimed to exist; that his belief in his partner's honesty disarmed suspicion; that he had no opportunity to examine the books before they were submitted to the arbitrators, nor that all the evidence submitted by the complainant at the hearing could not have been submitted to the arbitrators, nor that he did not have the fullest opportunity to present to the arbitrators every issue which he seeks to have tried in this proceeding. Nor is there any evidence that the defendant did not present his claims to the arbitrators in good faith and upon the full state of facts as he believed them to exist.

The evidence wholly failing to support any ground for avoiding the award, it remains binding between the parties and of course is not to be set aside, even though a court of chancery upon hearing the evidence might have arrived at a different conclusion from that expressed by the arbitrators.

The mistake of the arbitrators referred to in the pleadings is not such a mistake as would vitiate the award. Their mistake appears to have consisted in their

opinion of erroneous conclusions of fact. The award was their deliberate conclusion reached by their reason and judgment on the facts before them, and although they may upon reconsidering the same evidence or new evidence come to a different conclusion from that expressed in their award, it could not be avoided upon that ground. 5 C. J. p. 179; 2 R. C. L. 392.

The final decree should be reversed and the bill of complaint dismissed. It is so ordered.

TAYLOR, C. J., and COCKRELL and WHITFIELD, JJ., concur.

SHACKLEFORD, J., takes no part.