285 So.2d 652 (1973)
Foy BAXTER and Annie Smith Baxter, Appellants,
v.
ROYAL INDEMNITY COMPANY, Appellee.
No. S-327.
District Court of Appeal of Florida, First District.
November 6, 1973.
Rehearing Denied December 12, 1973.
*654 J. Ben Watkins of Watkins & Hill Tallahassee, for appellants.
J. Lewis Hall, Tallahassee, for appellee.
WIGGINTON, Acting Chief Judge.
Plaintiffs have appealed a final judgment which dismissed with prejudice their second amended complaint for failure to state a cause of action or to allege facts entitling them to the relief prayed for. Our burden is to determine whether the complaint filed by appellants alleges sufficient ultimate facts which under any theory of the law would entitle them to the money judgment they seek.
Appellee issued and delivered to appellants an automobile liability insurance policy covering a motor vehicle owned by them and containing the standard uninsured motorist provision, which is couched in the following terms, to wit:
"... [F]or the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."
The vehicle owned by appellants was struck by another vehicle negligently operated by an uninsured motorist, as a result of which appellants' minor son was killed and their minor daughter seriously and permanently injured. Appellants made demand on appellee for payment to them of the full amount of insurance coverage provided by the policy which they held, which demand was refused by appellee until the existence and amount of liability imposed upon it was fixed by arbitration as provided by the policy. Arbitration proceedings were conducted which resulted in an order finding in favor of appellants and awarding to them the full amount of coverage provided by the policy for the death and injuries sustained by their children.
The amount awarded appellants by the arbitrators was thereupon paid by appellee, following which the action sub judice was instituted. By their complaint framed in two counts appellants allege that appellee was guilty of bad faith in negotiating, evaluating, and paying the benefits which were due appellants under circumstances where appellee owed a legal duty to act in good faith. Because of such bad faith, appellants seek judgment for the full amount of damages suffered by them as a result of the death and injuries sustained by their children in excess of the policy limits. Secondarily, appellants allege that as a result of the bad faith negotiations of appellee, they were caused to incur additional expenses in and about the collection of the benefits due them under the policy and, in addition, suffered great mental stress and physical pain as a result of such conduct. The complaint alleges appellee's bad faith and wanton handling of appellants' claim were motivated by malice and were sufficient to warrant the imposition of punitive damages, for which judgment was prayed.
The basic issue of law presented by the complaint may be summarized as follows: When an automobile insurance policy contains *655 an "uninsured motorist" clause and the insured is involved in an accident with an uninsured motorist; reasonable investigation reveals that the uninsured motorist was solely at fault, and the damages clearly exceed the policy limits; the insured offers to settle with his insurer within the policy limits but the latter willfully, maliciously, and for its own selfish interest and gain, refuses to settle until the existence and amount of liability is fixed by arbitration; is the insurer liable for punitive damages or for actual damages in excess of the policy limits plus legal interest?
The trial court held in the negative and, based upon such holding, entered the judgment of dismissal for which review is hereby sought.
It is a fundamental principle of our jurisprudence that parties sui juris may make any contract they desire so long as it does not violate any law or public policy of the state. The insurance contract entered into between the parties to this cause provides that determination as to whether the insured is legally entitled to recover damages under the uninsured motorist provision thereof, and, if so, the amount to which he is entitled, shall be made by agreement between the insured and the company or, if they fail to agree, by arbitration. This is a valid provision which protects each of the parties and provides a convenient forum in which any disagreement between them may be promptly and efficiently settled. It would therefore appear that since the parties herein were unable to agree on the amount of damages, if any, to which appellants were entitled, the obligation of appellee to pay any specific amount did not arise until determined by arbitration.
The primary thrust of appellants' position appears to be that the insurance contract issued by appellee created a fiduciary relationship between the parties, imposing upon appellee the duty of exercising utmost good faith in its dealings with appellants as its insured; that when appellee failed to evaluate, negotiate, and settle appellants' claim in good faith, it breached the fiduciary duty owed appellants, thereby entitling them to both compensatory damages in excess of the policy limits as well as punitive damages for its tortious conduct. The theory on which appellants rely to support their right of recovery is an acceptable theory when applied to the bodily injury and property damage liability provisions of an automobile insurance policy, but it has no application to a claim arising under the uninsured motorist provision of the policy.
The bodily injury liability coverage of an automobile insurance contract normally provides that the insurer will pay on behalf of its insured within specified limits any sums which the insured may become legally obligated to pay as damages arising out of the use of the covered vehicle. The contract further provides that the insurer will defend the insured in any action brought against him, and complete control of the litigation is vested in the insurer. The insured binds himself to cooperate fully with the insurer and to neither negotiate for nor settle the claim against him without the insurer's knowledge and consent. A violation of this condition will cause a forfeiture of the insurance coverage. The relationship between the parties arising from the bodily injury liability provisions of the policy is fiduciary in nature, much akin to that of attorney and client. Because of such relationship, the insurer owes a duty to the insured to exercise the utmost good faith and a reasonable discretion in evaluating the claim made against him and in negotiating for a settlement of that claim within the policy limits if such is possible. If the circumstances are such that a reasonable and prudent man with the obligation to pay all the recoverable damages would settle for an amount within the policy limits, it is the legal duty of the insurer to do so. Failure to effect such a settlement would unreasonably risk the danger of a judgment in excess of the policy limits for which the insured would be *656 liable but for which the insurer would not. By taking such an unreasonable risk, the insurer would be gambling with the insured's money to the latter's prejudice. Because of the fiduciary relationship arising under the bodily injury liability provisions of an automobile policy, insurers have been held liable for any judgment rendered against their insured in excess of the policy limits if the insurer had the opportunity to but refused in good faith to negotiate for or to settle the plaintiff's claim within the policy limits.[1] Under the doctrine of Shingleton v. Bussey[2] the right of the insured to recover against his insurer because of the latter's bad faith in failing to settle a claim against its insured within policy limits has now been extended to the successful plaintiff-judgment creditor on the third-party-beneficiary theory.[3]
The relationship of the parties under the uninsured motorist provision of an automobile liability policy is the very antithesis of that established by the bodily injury liability provisions of the same policy. By virtue of the uninsured motorist provision the insurer in effect becomes the insurer of the uninsured motorist to the extent of the policy limits. It is singularly important to also note that regardless of the bad faith of the insurer in refusing to settle a claim against it by its insured under this provision of the policy, such action of the insurer can never result in a judgment against the uninsured motorist for any excess liability. The exact contrary is true regarding claims against the insured under the bodily injury liability provision of the policy. Under the uninsured motorist provision the parties occupy a contractually adversary position toward each other. The insurer may lawfully avoid liability to its insured by proving in the arbitration proceedings that the offending negligent motorist was not in fact uninsured but, on the contrary, maintained the amount of insurance required by law; or, the uninsured motorist was not guilty of negligence which proximately caused the insured's damages; or, the insured did not suffer the damages he claimed. Because the interests of the insurer are wholly adverse to those of its insured as to every facet of a claim under the uninsured motorist provision of the policy, no basis for a fiduciary relationship between the parties exists.
It is the existence of the fiduciary relationship between the parties under the bodily injury liability provisions of the policy which imposes upon the insurer the obligation of exercising good faith in negotiating for and effecting a settlement of the claim against its insured and which subjects it to excess liability if it acts in bad faith or through fraud. It is because of the absence of such fiduciary relationship that no similar obligation rests upon the insured with respect to claims made against it under the uninsured motorist provision of the policy. As noted above, the terms of the contract entered into between the parties provide that if they cannot agree with regard to any claim made by the insured under the questioned section of the policy, the dispute will be settled by arbitration. It is difficult to rationalize how either party could be charged with the commission of a tort merely because it elected to exercise a lawful option open to it under the contract. If a party to a contract exercises an option given to it by the clear and lawful terms thereof, it would appear immaterial whether such election was motivated by good faith, bad faith, self-interest, malice, spite, or indifference.
Claims made under the uninsured motorist provision are not controlled by the insurer to the exclusion of the insured as is the case under the bodily injury liability provisions of the policy. If the insured makes a claim for damages allegedly *657 suffered by him as the result of the negligence of an uninsured motorist and the insurer fails or refuses within a reasonable time to pay such claim, the insured is free to immediately demand arbitration and secure a prompt and just settlement of his claim. The insured is not required to wait indefinitely for the insurer to investigate, evaluate, and reach a conclusion as to whether it is liable and, if so, for how much. The penalty imposed by law on the insurer for its failure to settle the claim of its insured within a reasonable time is the payment of interest at the legal rate. The insured has identically the same right to pursue a lawful remedy and secure full recourse for damages suffered by him under this provision of the policy as he has in pursuing a claim against his insurer under the comprehensive and collision coverage provision of the same policy. In claims for damages suffered by the insured's vehicle as the result of a collision, the parties are likewise in a contractually adversary position and the insurer occupies no fiduciary relationship in its dealings with its insured. If the insured makes claim for collision damages suffered by him under the policy and the insurer fails or refuses within a reasonable time to settle such claim, suit may be promptly instituted by the insured in a court of competent jurisdiction and full recourse afforded according to law. It could hardly be said that because the insurer fails or refuses for any cause to meet the demands of its insured for a collision damage settlement under this section of the policy, the insurer would be liable for both compensatory and punitive damages suffered by the insured as the result of such refusal. The legal relationship existing between the insured and his insurer on claims for collision damages or damages caused by uninsured motorists is that of debtor and creditor in which no fiduciary relationship is present. It would be a strange quirk in the law to hold that each time a debtor fails or refuses to pay demands made upon it by a creditor, the debtor would be liable for both compensatory and punitive damages even though his failure or refusal was motivated by spite, malice, or bad faith.
Appellants have cited and take considerable comfort in a decision rendered by a California court in the case of Richardson v. Employers Liability Assurance Corporation.[4] In Richardson, the plaintiffs-insureds obtained a judgment against their liability insurance carrier for the latter's tortious breach of duty in failing to settle promptly in good faith and without arbitration their claims arising out of an automobile collision with an uninsured motorist. In affirming the judgment the court held that the failure of the insurance company to deal fairly in good faith with its insured breached a duty imposed by law, not one arising from the terms of the contract itself, which breach constitutes a tort. The cause of action in Richardson, however, was predicated upon a statute in effect in California which provides:
"In an action for breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."
Because of the existence of the above-quoted statute which has no counterpart in the law of Florida, the decision reached by California in Richardson is inapplicable here. To the extent of any similarities between the legal and factual situation present in Richardson and that present in the case sub judice, we can only say that we do not approve the rule of law pronounced therein and elect not to adopt it as the law of Florida.
For the reasons hereinabove stated, we conclude that the trial court was *658 correct in its analysis of the controlling principles of law applicable to the provisions of the insurance contract involved in this case and the material facts alleged in the complaint. We, too, conclude that the complaint fails to state a cause of action or allege facts on which relief may be granted. The judgment appealed is accordingly affirmed.
JOHNSON, J., concurs.
SPECTOR, J., dissents.
SPECTOR, Judge (dissenting):
I respectfully dissent from the majority opinion herein.
The issue in this case is whether under Florida law an automobile liability insurance company can arbitrarily and without cause refuse to settle a lawful claim within policy limits under the uninsured motorist coverage provision of its policy. The trial court said, yes, the company can arbitrarily and without cause refuse to settle, and now a majority of the court says, yes, the company can refuse to settle even though it does so arbitrarily and without cause. With due deference to my colleagues, I cannot agree that such a result accords with law or logic, not to mention justice.
The trial court stated the question presented to be:
"When an automobile insurance policy contains an `uninsured motorist' clause and
1. The insured is involved in an accident with an uninsured motorist;
2. Reasonable investigation reveals that the uninsured motorist was solely at fault;
3. The damages clearly exceed the policy limits;
4. The insured offers to settle with his insurer within the policy limits;
5. The insurer refuses to settle until the existence and amount of liability is fixed by arbitration,
is the insurer liable for punitive damages or for actual damages in excess of the policy limits plus legal interest?"
Appellee contends that it has the unfettered power to insist upon its right to arbitrate because the insurance policy gives it that right. Appellee further argues in its brief that there are numerous issues which could arise which could defeat an insured's right to recover under the uninsured motorist coverage clause.
Appellants do not contend that the company has no right to its defenses. They contend only that where there are no defenses and none are interposed by the company, then and in that event the company has a duty to go on and pay the insured the money the company promised it would pay. I think appellants are correct. The company should not be permitted to resort to arbitration just for the purpose of making the claimant accept less than he is entitled to by its delaying tactics.
Appellants' complaint alleged, inter alia, that they were insured with appellee under a policy containing an uninsured motorist coverage clause; they were involved in an accident with an uninsured motorist who was solely at fault for the accident; the damages clearly exceeded the policy limits and they offered to settle within those limits, but appellee refused to do so until the existence and amount of liability was determined by arbitration. Upon such refusal, appellants sued alleging that appellee's conduct amounted to a willful, wanton and malicious breach of appellee's contractual obligation so as to constitute tortious conduct for which punitive damages will lie over and above the policy limits. In arriving at the final judgment, the trial court assumed that reasonable investigation revealed the other motorist to be both uninsured and at fault. The court also assumed that the damages clearly exceeded *659 the policy limits and that appellants offered to settle within those limits.
No reason was cited by the trial court or this court's majority to support appellee's insistence on arbitration other than the bare provision for arbitration found in the insurance policy which reads:
"... for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."
The trial court held that in absence of agreement the obligation to pay any specific amount did not arise until determined by arbitration. This holding is consistent with a literal interpretation of the language in the insurance policy. However, it ignores the purpose of arbitration. Its object is to expedite and facilitate the settlement of disputes, thus avoiding the formalities, delay, expense, and vexation of ordinary litigation. Johnson v. Wells (1916) 72 Fla. 290, 73 So. 188. Appellee is not entitled to arbitration in the case at bar simply because there is no dispute to arbitrate. Given the facts assumed to exist by the trial court in its final judgment, I see no reason why an insurer's insistence on arbitration before paying out the policy limits is anything other than a delaying tactic designed to coerce an insured to accept a settlement for less than the insurer undertook to pay.
A demand for arbitration must be made in good faith. In New Amsterdam Casualty Co. v. J.H. Blackshear, Inc., 156 So. 695, the Florida Supreme Court had before it a policy clause similar to the one in this case which provided:
"Condition J: In case of a disagreement as respects loss under Insuring Agreement (3) such loss shall, upon written demand of either party hereto, be determined by [appraisers] ..."
Rejecting the insurer's reliance on its demand for an appraisal as a defense to an action by the insured, the court stated that a demand for appraisal must be made in good faith. In other words, though the insurance policy expressly provided that either party may demand an appraisal in event of disagreement as to amount of loss, such a demand must be made in good faith. Since the purpose of appraisals and arbitrations is generally the same, having many common attributes, Hanover Fire Ins. Co. v. B.C. Lewis & Sons, 28 Fla. 209, 10 So. 297, I see no reason why the rule that demands for appraisals by insurance companies must be made in good faith should not apply to demands for arbitration as well.
The relationship between an insurer and its insured is one that requires the exercise of good faith. In Nationwide Mutual Ins. Co. v. McNulty, Fla., 229 So.2d 585, the court held that the duty of a liability insurer to exercise good faith in the settlement of claims against its insured arises out of contract. The duty to exercise good faith toward its insureds as stated in McNulty, supra, was later stated to be for the purpose of shielding or protecting the insured against an unreasonable or unnecessary risk of suffering a verdict in favor of a claimant which exceeded the coverage provided by the policy and thus exposed the insured to liability for that overage. It was said in that line of cases, a myriad of which are cited in the footnotes to the discussion of an insurer's duty to settle or compromise found in 18A Fla.Jur., Insurance, § 808 et seq., that the duty, though not expressed flows from the contract and is ex contractu in character and thus the right to enforce that duty is, as are all contractual rights assignable.
However, the right to enforce that duty was extended to persons not in privity with *660 the insurer either through contract or assignment in the more recent decision of the Supreme Court in Thompson v. Commercial Union Ins. Co., Fla., 250 So.2d 259. There the court held that an injured person could sue an insurer for an excess judgment against the insured even though the insured's contractual right to breach of good faith damages was not assigned to the injured party. That holding rests on the recognition of the public policy underlying automobile insurance coverage as being for the protection of not only the insured but the public as well! It is for that reason that an insured under an uninsured motorist provision of a liability policy is fully justified in insisting on good faith treatment from his own insurer merely because there is no risk of an excess verdict to him.
It may well have been, and we so held in Thompson v. Commercial Union Insurance Co., Fla.App., 237 So.2d 247, when that case appeared in this court prior to its quashal by the Supreme Court, that the only contractual interest protected against bad faith failure to settle cases was the interest of the insured to be protected against unnecessary exposure to an excess verdict and therefore the insurer's duty was limited to the protection of that interest.
But, that is no longer the law. In Thompson, supra, the Supreme Court broadened the interests to be protected beyond the insured's exposure to an excess verdict and extended those interests to include the right of the public to be protected against bad faith refusal to negotiate or settle the claims of persons injured by the tort of an insured. By invoking the rationale of Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969), the Supreme Court recognized that an insurer's duty to exercise good faith is neither limited to the purpose of shielding the insured from excess verdicts nor is that duty owed solely to its insured  that duty extends and is owed to the public as well. There seems no doubt that by holding that the insurer owes the duty of good faith to a third party beneficiary, it is now indisputable that an insurer owes an equal duty to a first party beneficiary  the insured himself.
Appellant relies heavily on Richardson v. Employers Liability Assurance Corp., (1972) 25 Cal. App.3d 232, 102 Cal. Rptr. 547. In that case, the court applied the universally recognized rule that in every insurance policy there is implied by law a covenant of good faith and fair dealing. The identical rule is the well settled law of Florida. Auto Mut. Indemnity Co. v. Shaw, (1938) 134 Fla. 815, 184 So. 852; American Fire and Causalty Co. v. Davis, 146 So.2d 615 (Fla.App. 1962); Ging v. American Liberty Insurance Co., (1968) 293 F. Supp. 756. That covenant imposes upon the insurer the duty to deal in good faith and fairly in handling an insured's claim against it. That duty is not limited to automobile liability insurance; it extends to all forms of insurance  life, fire, health and accident, and disability  to mention some. In Richardson, supra, the court held that where a claim under an uninsured motorists clause in a liability policy is forced into arbitration when the insurer or its agent knew the claim was a valid claim falling well within the policy limits and coverage provisions, such conduct evidenced a motive and willingness on the part of the insurer to vex and annoy the insured and the conduct constituted malice and oppression for which an award of punitive damages was justified. I think the holding in Richardson not only is sound but is consonant with the principles adhered to in Florida cases in which an insured sues an insurer for bad faith failure to settle or negotiate. See 18A Fla.Jur., Insurance, § 808, et seq., and the numerous cases cited therein. See also this court's opinion in Government Employees Insurance Company v. Whitaker, Fla.App., 218 So.2d 198, holding inter alia that an uninsured motorist coverage carrier waives its right to arbitration by its failure or refusal to negotiate a settlement in good faith *661 where such refusal is for the purpose of obtaining an apportionment of the damages between multiple carriers. The Whitaker case standing alone may well be authority for the rejection of this appellee's contention that its right to demand arbitration is unfettered and can therefore be invoked in the face of clear and unmistakable liability.
The contention that the Richardson case is not persuasive authority because it is based on a California statute is untenable. That statute is but a restatement or codification of existing law prevailing in almost every state in the union. Brown v. Coates, 102 U.S.App.D.C. 300, 253 F.2d 36, 67 A.L.R.2d 943. The allowance of punitive or exemplary damages in the California statute finds its basis in the common law, 22 Am.Jur.2d, Damages, § 237, fn. 18, and the rule has been adopted by the courts or the legislatures of most states of this country. Ibid., § 238, fn. 15.
The California statute reads as follows:
"§ 3294. Exemplary damages; when allowable. In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."
The above statute was enacted in 1872 and was based on an earlier New York law, Field's Draft N.Y.C.C., § 1839. Even a cursory reading reveals that the California statute is one relating to actions for punitive damages generally and not expressly tailored for actions against insurance companies. Indeed, the annotations of cases found under § 3294 Deering's California Codes Annotated reveal the statute applies to the full spectrum of cases in which punitive damages are generally allowed. Actions cognizant of the principles stated in the statute run from assault and battery, Wilson v. Middleton (1852) 2 Cal. 54 [note that the Wilson case was decided twenty years before the California statute was enacted]; breach of contract where the breach amounts to an independent tort and the plaintiff alleges fraud, oppression or malice, Walton v. Anderson, 6 Cal. App.3d 1003, 86 Cal. Rptr. 345; conversion, Arzaga v. Villalba (1890) 85 Cal. 191, 24 P. 656; false arrest and malicious prosecution, Singleton v. Singleton, 68 C.A.2d 681, 157 P.2d 886; and the like. These widely variant causes of action are set forth in order to demonstrate that the California statute is not a specific statute relating to actions for punitive damages against insurers based on bad faith, but rather the statute is of general application and relates to all manner of punitive damages.
While the Florida Legislature has not enacted an analogous statute, a comparison of the language of the California statute with the decisional law of Florida as stated in Florida Jurisprudence explains why we have no such statute. The reason simply is that the principle of the California statute is already the law of Florida!
9A Fla.Jur., Damages, § 124, states the law of this jurisdiction to be that generally damages for breach of contract are limited to the pecuniary loss sustained but that law does not obtain "... in those exceptional cases where the breach amounts to an independent, wilful tort, in which event exemplary damages may be recovered under proper allegations of malice, wantonness, or oppression." In such cases the intentional wrong amounts to an independent tort. Griffith v. Shamrock Village, Inc., (Fla.) 94 So.2d 854, and Associated Heavy Equipment Schools, Inc. v. Masiello, 219 So.2d 465 (Fla.App. 1969). A reading of the cited Florida authorites shows that the statutory provision in California has its counterpart in Florida's common law.
I believe an insurer has an obligation to make payment in absence of reasonable *662 disputes as to coverage, liability or damages. Failure to pay constitutes conduct of an outrageous character and constitutes abuse. It is now generally recognized that "extreme `bullying tactics' and other `high pressure' methods of insurance adjusters seeking to force compromises or settlements may constitute outrageous conduct." Eckenrode v. Life of America Insurance Company, 470 F.2d 1, 4 (7 Cir.1972) citing Restatement 2d Torts, § 46, Comment (e) and Prosser, Torts, § 11 at 49-50.
Arbitrary refusal to settle where there are no reasonable defenses is wrong  it is a tort. Nuisance defenses are no more to be tolerated than nuisance claims. The latter are on their way out because of the recently enacted "no fault" automobile insurance laws. The former deserve the same fate. Allowance of punitive damages for tortious refusal to settle will have the salutory effect of eliminating such nuisance defenses.
While I believe that the circumstances reflected in the record of the case sub judice support the allowance of punitive damages, it is perhaps necessary to make it clear that there are many occasions when an insurer is amply justified in refusing to accede to a claimant's demand. Where there is reasonable doubt as to the liability, nature and extent of damages and the like, the insurer's right to litigate those issues is unquestioned. However, in my view, there is no reasonable doubt as to those factors in this case and, indeed, the trial court assumed the absence of such doubts in its statement of the question presented.
I would reverse the order dismissing appellant's complaint and remand for trial of the (1) actual damages limited by the policy limits, (2) compensatory damages resulting from appellee's failure to settle within policy limits, if any, and (3) punitive damages to be assessed against appellee if the jury should find that appellee's refusal to settle was tortious in accordance with the cited and related cases.
NOTES
[1] American Fire and Casualty Company v. Davis, (Fla.App. 1962) 146 So.2d 615; Auto Mut. Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852.
[2] Shingleton v. Bussey, (Fla. 1969) 223 So.2d 713.
[3] Thompson v. Commercial Union Insurance Company, (Fla. 1971) 250 So.2d 259.
[4] Richardson v. Employers Liability Assurance Corporation, Ltd., 25 Cal. App.3d 232, 102 Cal. Rep. 547.