**NIRVANA CONDOMINIUM ASSOCIATION, INC.,**
Plaintiff,

v.

**QBE INSURANCE CORPORATION,**
Defendant.

Case No. 08–21554–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 8, 2008.

Keith Jeffrey Lambdin, Garfinkel Trial Group, Maitland, FL, Daniel S. Rosenbaum, John Marcus Siracusa, Tatiana B. Yaques, Richard Chambers Valuntas, Katzman Garfinkel Rosenbaum, Laurel Ruthanne Wiley, Becker & Poliakoff, West Palm Beach, FL, for Plaintiff.

Amy Millan Demartino, James Joseph Wicker, II, Wicker Smith O'Hara McCoy & Ford, West Palm Beach, FL, William S. Berk, Berk Merchant & Sims PLC, Coral Gables, FL, for Defendant.

### ORDER AFFIRMING MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

DONALD L. GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Defendant's Motion to Dismiss Count II and III of the Complaint (D.E. 1 at 88).

**THE MATTER** was referred to the Honorable United States Magistrate Judge Edwin G. Torres. A Report & Recommendation (D.E. 32) has been filed recommending that Defendant's Motion be granted, in part and denied, in part. Objections to the Report and Recommendation have been filed.

The **COURT** has conducted a *de novo* review of the file and is otherwise fully advised in the premises. Accordingly, it is

**ORDERED AND ADJUDGED** that United States Magistrate Judge Edwin G. Torres' Report & Recommendation, is hereby RATIFIED, AFFIRMED and APPROVED in its entirety. Therefore, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Count II and III (D.E. 1 at 88) is hereby **GRANTED, in part and DENIED, in part.** Count II of the Complaint is **DISMISSED**

without leave to amend. Count III remains as appropriate.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT

EDWIN G. TORRES, United States Magistrate Judge.

This matter is before the Court on Defendant's, QBE Insurance Corp. ("QBE"), Motion to Dismiss Counts II and III of the Complaint [D.E. 1 at 88] filed in this case by Plaintiff Nirvana Condominium Association, Inc. ("Nirvana"). The Court has reviewed the motion, Nirvana's response, the reply, related authorities submitted by the parties, and the record in the case. For the foregoing reasons, the motion to dismiss should be granted in part and denied in part.

### I. BACKGROUND

Nirvana filed this declaratory judgment and contract action against QBE arising from property damage allegedly suffered due to Hurricane Wilma at Nirvana's condominium complex. Nirvana had purchased a commercial residential property insurance policy from QBE in May 2005 at a substantial premium. During the term of that policy, Hurricane Wilma struck on October 24, 2005, allegedly causing significant wind and water damage throughout the condominium complex. Nirvana filed a claim on the policy with QBE. Despite conducting inspections by QBE representatives at the property, the complaint alleges that QBE failed to fully advance insurance proceeds for the amount of damages or to otherwise pay the claim.

The complaint alleges three causes of action: (1) breach of contract for failure to provide coverage; (2) breach of implied warranty of good faith and fair dealing; and (3) declaratory judgment. QBE now moves to dismiss Counts II and III of the complaint [D.E. 1 at 88], but does not challenge at the pleading stage Count I for breach of contract.

### II. ANALYSIS

The purpose of a motion brought pursuant to Fed.R.Civ.P. 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It is read alongside Fed.R.Civ.P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a 12(b)(6) motion to dismiss, a complaint need not be detailed, but the factual allegations contained therein "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. The Court does not require heightened fact pleading, but does require enough facts to state a claim to relief that is plausible on its face. *Id.* at 1974. In other words, "in considering a motion to dismiss, a court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions." *Jackson v. Bellsouth Telecomm., Inc.*, 181 F.Supp.2d 1345, 1353 (S.D.Fla.2001).

In construing the allegations in the complaint, the Court must accept such allegations as true, and view them in a light most favorable to the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517

(1993); *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.2007). A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 127 S.Ct. at 1965 (internal citation omitted).

The Court must, finally, analyze the issues raised in the motion to dismiss under Florida law, as the parties have agreed that such law provides the rule of decision in this case arising from a contract for insurance on real property in this state.

### A. *Count II—Breach of Implied Warranty of Good Faith and Fair Dealing*

The complaint alleges in Count II that Nirvana is entitled to damages based on QBE's breach of its implied warranty of good faith and fair dealing that is part of its insurance contract. Nirvana alleges that, as a result of QBE's failure to fairly and promptly investigate, pay, or settle the damage claim, it suffered general compensatory damages. [D.E. 1 at 11 ¶ 28]. Nirvana also seeks attorney's fees under Fla. Stat. § 627.428.

QBE, however, moves to dismiss this claim because, as a matter of law, a contractual claim for a breach of the duty of good faith and fair dealing cannot be raised until the coverage litigation has concluded, as is the case with a statutory bad faith claim under Fla. Stat. § 624.155. QBE maintains that Nirvana's contractual claim is nothing more than a bad faith claim disguised as a breach of contract claim. QBE points repeatedly to Chief Judge Moreno's holding in *Quadomain v. QBE*, 2007 WL 1424596 at *4–5 (S.D.Fla. May 14, 2007), that an implied warranty

claim is premature within the scope of this coverage dispute.

Nirvana responds that its cause of action plead in Count II is separate and distinct from a cause of action for first-party bad faith, which is extra-contractual in nature, while this implied warranty claim arises strictly from the express contractual provisions that QBE breached that frustrated Nirvana's contractual expectations. Notably, Nirvana's response does little to distinguish or reconcile its argument with this Court's decision in *Quadomain*. Instead, Nirvana cites to Judge Ryskamp's decision in *Townhouses of Highland Beach Condominium Association, Inc. v. QBE*, 504 F.Supp.2d 1307 (S.D.Fla.2007), where the Court denied a motion to dismiss the claim for breach of implied warranty of good faith and fair dealing. However, it is important to note that Judge Ryskamp did not consider the *Quadomain* ruling in his legal analysis because Defendant failed to file a notice of supplemental authority. It was not until Defendant's filing of its Motion for Reconsideration, when Judge Ryskamp addressed the *Quadomain* decision by briefly distinguishing it. In his Order Denying Motion for Reconsideration, Judge Ryskamp found *Quadomain* holding to be unpersuasive due to its partial reliance on *Trief v. Am. Gen. Life Ins. Co.*, 444 F.Supp.2d 1268 (S.D.Fla.2006), which Judge Ryskamp also found distinguishable because the policy language at issue did not specify the process for adjusting, investigating or paying claims. Plaintiff here invites that we also ignore the *Quadomain* holding and deny Defendant's motion to dismiss. We decline the invitation.

Notwithstanding Judge Ryskamp's decision in *Townhouses of Highland Beach*, we hold that the *Quadomain* decision squarely applies here. Chief Judge Moreno's

Order held that a breach of implied warranty allegation could theoretically be asserted together with an express breach of contract claim arising from the failure to provide property coverage under Florida law, notwithstanding the settled rule that there is no separate cause of action for breach of that implied duty. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir.1999), *cited in Quadomain*, 2007 WL 1424596 at *4. Nevertheless, the Court also held that the claim had to be dismissed based upon its overlap with a statutory bad faith claim that can only be brought under Fla. Stat. § 624.155. And because such a bad faith claim is premature before the coverage litigation is adjudicated, *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So.2d 1289, 1291 (Fla. 1991), the Court dismissed the contractual claim for breach of the implied warranty of good faith that was a disguised bad faith claim. *Quadomain*, 2007 WL 1424596 at *5–6.

We agree with that same analysis here. Nirvana's claim is based on an implied contractual obligation based upon its reasonable contractual expectations. Nevertheless, because the factual allegations underlying its claim are based upon QBE's failure to fairly and promptly perform under its obligations in the contract, that contractual claim can only be asserted, if at all, together with the extra-contractual bad faith claim under section 624.155.

The *Quadomain* decision, as well as other courts that reached similar conclusions, reached, in our view, the correct result under Florida law. *See also Trief v. Am. Gen. Life Ins. Co.*, 444 F.Supp.2d 1268, 1269 (S.D.Fla.2006) (Ungaro, J.); *Mid–Continent Cas. Co. v. Royal Palm Estate Builders, Inc.*, 2007 WL 4225801, 2007 U.S. Dist. LEXIS 74699 (S.D.Fla.2007) (Hurley, J.); *CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*, 2006 WL 2947853, 2006 U.S. Dist. LEXIS 75003 (M.D.Fla.2006) (Presnell, J.).

The fundamental basis for the contrary view is that, absent express guidance from the Florida Supreme Court or the Florida Legislature, section 624.155 cannot be read to preempt a contractual claim arising from the implied warranty of good faith that is inherent in all insurance contracts. The problem with that theory is that, in fact, the Florida Supreme Court has repeatedly addressed this issue in varying contexts.

The Florida Supreme Court has on many different occasions explained that, prior to 1982, there was *no* "civil remedy" for an insurer's bad faith in the first-party coverage context. For instance, in a case addressing work product privilege for first-party bad faith claims, *Allstate Indemnity Co. v. Ruiz*, the Court held that, the "statutory remedy [under Fla. Stat. § 624.155] essentially extended the duty of an insurer to act in good faith and deal fairly in those instances where an insured seeks first-party coverage or benefits under a policy of insurance." 899 So.2d 1121, 1126, 1129 (Fla.2005) (citing in part *Fidelity & Casualty Insurance Co. of New York v. Taylor*, 525 So.2d 908 (Fla. 3d DCA 1987) ("In a 'first-party' action against an insurance carrier founded upon section 624.155(1)(b), which affirmatively creates a company duty to its insured to act in good faith in its dealings under the policy, liability is based upon the carrier's conduct in processing and paying a given claim.")).

The Court's use of the term "civil remedy" is significant. The Court did not merely say "civil tort" claim or "non-contractual" claim or "extra-contractual" claim. It said no "civil remedy" was avail-

able. That would obviously include the claim presented here, a breach of contract claim for contractual damages under the implied warranty of good faith and fair dealing. This rebuts the argument that an implied warranty claim is not preempted by section 624.155 because it is contractual, while the statutory bad faith claim is extra-contractual. Both types of claims never existed prior to 1982.

Ruiz is not alone. In *Macola v. Government Employees Insurance Co.*, 953 So.2d 451 (Fla.2006), the Supreme Court was addressing, in a third-party bad faith context, whether a common law claim could be asserted in the face of an insurer's tender of policy limits following receipt of a civil remedy notice under the statute. The Court again reviewed Florida's bad faith jurisprudence and acknowledged that common law first-party bad faith actions never existed. "If an insurer acted in bad faith in settling a claim filed by its insured, the only common law action available to the insured was a breach of contract action against the insurer in which damages were limited to those contemplated by the parties in the insurance policy." *Id.* at 455.

*Macola* cited in support for that conclusion its earlier decision in *Talat Enterprises, Inc. v. Aetna Casualty and Surety Co.*, where the Court explained that "the civil remedy provided in subdivision (1)(b)(1) *was not in existence for first-party insureds before the adoption of the civil remedy statute.*" 753 So.2d 1278, 1283 (Fla. 2000) (emphasis added). The Court added that for "[plaintiff] there is no remedy without the statute." *Id.* As a consequence, the Supreme Court affirmed summary judgment against a policyholder that filed suit "for breach of a covenant of good faith and fair dealing to promptly negotiate and settle [plaintiff's] claim" because

the insurer had complied with the cure provision found in Fla. Stat. § 624.155(2)(d) by paying the underling contract damages within sixty days from the date the plaintiff filed its bad-faith notice. The plaintiff had argued that the insurer was required to pay not only the damages flowing directly from the policy but also "all extra-contractual damages flowing from Aetna's alleged failure to make a good faith attempt to settle [plaintiff's] claim." *Id.* at 1279.

If, as Nirvana's argument implies, the plaintiff in that case could have ignored the statutory bad faith claim (and the conditions precedent in that statute that doomed his claim) and filed instead a breach of implied warranty claim together with his underlying coverage dispute, how could the Florida Supreme Court have reached the conclusion that the plaintiff's only theory of recovery arose under the statute? And why would it have said in *Macola* that, absent the statutory bad faith claim, an insured in Florida was limited to the breach of contract claim for only the limits of the policy. Thus, if the plaintiffs referred to in *Macola* and *Talat* could not recover their extra-contractual damages except as strictly provided for under the statute, how can Nirvana recover extra-contractual damages here (i.e. the financing cost incurred from the delayed payment on the policy) when it had no civil remedy for those damages, according to the Court, before the 1982 legislative act that enacted section 624.155? "[L]ogic and common sense"—to use the words of the Florida Supreme Court—dictate that Nirvana cannot recover those extra-contractual damages here either. *Id.* at 1284.

Further support for this conclusion is found in earlier cases. In *State Farm Mutual Auto Insurance Co. v. Laforet*, the

Court reviewed extensively the history of both first-party and third-party bad faith claims. 658 So.2d 55 (Fla.1995). Again, the Court explained that, while third-party actions against insurers for breach of their duty of good faith dated back to 1938, Florida courts had refused to recognize any liability against the insurer to its insureds based upon the insurer's lack of good faith in settling claims. *Id.* at 57–59.

One of the examples the court cited was an appellate court decision from the First District, *Baxter v. Royal Indemn. Co.,* 285 So.2d 652 (Fla. 1st DCA 1973). In *Baxter,* the court held that the insurer's refusal to pay on an automobile policy until it received an adverse coverage decision from an arbitrator could not entitle the insured to consequential damages from that refusal because the insurer's options under the policy could be exercised regardless of "good faith, bad faith, self-interest, malice, spit, or indifference." *Id.* at 656. That conclusion was reached in the face of a persuasive dissent that argued, as Nirvana does here, under the "settled law of Florida" that there is in every insurance policy "implied by law a covenant of good faith and fair dealing," *id.* at 660 (citing in part *Auto Mut. Indemn. Co. v. Shaw,* 134 Fla. 815, 184 So. 852 (1938)). Moreover, the dissent found support for its conclusion from a California decision based on a California good faith statute. "While the Florida Legislature has not enacted an analogous statute, a comparison of the language of the California statute with the decisional law of Florida as stated in Florida jurisprudence explains why we have no statute. *The reason simply is that the principle of the California statute is already the law of Florida!"* *Id.* at 661 (emphasis added).

The only reasonable conclusion that can be drawn now is that the *Baxter* dissent's theory—that there is a contractual duty of good faith against an insurer enforceable at law—was never accepted by Florida courts until the Legislature adopted the very same type of statute in 1982. If, as Nirvana argues, there was always an implied duty of good faith enforceable at law under the insurance contract, there would have been no need for the enactment of section 624.155. But as the Florida Supreme Court has repeatedly made clear, no theory of liability was *ever* available to an insured against the insurer until 1982. That clearly includes a contractual theory of liability based on the implied covenant or warranty of good faith and fair dealing.

To argue now, 26 years later, that there was this contractual/implied theory of liability lying in the weeds all along simply flies in the face of historical fact and judicial precedent. And because we in federal court must apply state law in accordance with the decisions of the Florida Supreme Court and its intermediate appellate courts, *McMahan v. Toto,* 311 F.3d 1077, 1079 (11th Cir.2002), it is not possible to conclude in the face of all these cases that Nirvana has a contractual cause of action for breach of implied warranty of good faith outside the scope of a section 624.155 bad faith claim, which indisputably cannot be raised until this coverage case is over.

■ Therefore, based on *Quadomain* and our own analysis of the issue, Nirvana's contractual claim for breach of QBE's implied warranty of good faith and fair dealing must be dismissed as a matter of law. Nirvana's relief for the unreasonable or untimely payment of its claim is limited to a section 624.155 action that does not ripen until this litigation is concluded. Count II should be dismissed.

**B.** **Count III—Declaratory Judgment**

■ The "case or controversy" requirement of the Constitution is an important

limitation on federal court jurisdiction. U.S. Const., art. III, § 2. "To satisfy the case and controversy requirement of Article III, a plaintiff must have suffered some actual injury that can be remedied or redressed by a favorable judicial decision." *National Advertising Co. v. City of Ft. Lauderdale,* 934 F.2d 283, 285–86 (11th Cir.1991). This requirement shields federal courts from being drawn into disputes as to abstract or hypothetical cases, or ones in which purely advisory opinions affecting a dispute are being sought. *E.g., Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Webster v. Reproductive Health Servs.,* 492 U.S. 490, 500, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989).

As explained by the Eleventh Circuit:

The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.

*Emory v. Peeler,* 756 F.2d 1547, 1551–52 (11th Cir.1985). *Accord* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 3532.1 at 114 (2d ed.) ("The central perception [of the justiciability doctrines] is that courts should not render decisions absent a genuine need to resolve a real dispute. Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance.").

Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201, under which Count III of the complaint must be based, is a grant of jurisdiction only as to those rights and liabilities that are immediate and real, or that are certain to arise. *E.g., Calderon v. Ashmus,* 523 U.S. 740, 746–47, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) (no case or controversy where action seeks declaratory relief as to validity of defenses that may or may not be raised in subsequent litigation).[1] A party seeking a declaration judgment must allege facts in a complaint from which it appears that there is a substantial likelihood that it will suffer injury in the future. *Malowney v. Federal Collection Deposit Group,* 193 F.3d 1342, 1346 (11th Cir.1999) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Cone Corp. v. Florida Dep't of Transp.,* 921 F.2d 1190, 1205 (11th Cir.1991)).

We agree with Nirvana that it has properly stated a cause of action for declaratory judgment with regard to all allegations listed in Count III. Closer analysis of the pleadings indicates that a dispute exists between the parties as to the validi-

---

1. The complaint is technically based only on Chapter 86, Florida Statutes, which is the state's version of the Declaratory Judgments Act. *See* Fla. Stat. § 86.021. The state statute is, however, a procedural mechanism within the Civil Practice and Procedure Chapters, Title VI, that confers subject matter jurisdiction on Florida circuit and county courts. There is nothing in this particular statutory provision that confers any substantive rights. Therefore, as this is a diversity action in federal court, we cannot apply that statute to determine whether or not a declaratory action can lie. *See, e.g., McMahan v. Toto,* 256 F.3d 1120, 1131–32 (11th Cir.2001) (applying *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). As a practical matter, however, the elements required under the federal or state declaratory judgment acts are not materially different. *Compare Malowney,* 193 F.3d at 1346, *with Floyd v. Guardian Life Ins. Co.,* 415 So.2d 103, 104 (Fla. 3d DCA 1982).

ty of the insurance contract. In its responsive pleading, QBE has denied that Plaintiff's insurance was in full force and effect at the time of Hurricane Wilma [D.E. 1 Exhibit I ¶ 7]. Therefore, there is an actual injury that Nirvana has alleged in the complaint that requires declaratory adjudication of the general enforceability of the contract.

Secondly, Plaintiff is seeking declaratory judgment regarding the validity of the hurricane deductible provision, which is included in the contract, due to its failure to comply with Fla. Stat. § 627.701. QBE argues that this Court should dismiss this claim because no cause of action can exist under Fla. Stat. § 627.701, citing to *Chalfonte Condo. Apt. Ass'n v. QBE*, 2007 WL 1489817 (S.D.Fla. May 18, 2007). Contrary to Defendant's assertion, however, *Chalfonte* has no bearing on the declaratory judgment issue. In contrast to *Chalfonte*, Nirvana is not asserting a claim against QBE under Fla. Stat. § 627.701. Instead, Nirvana is only purporting to resolve the enforceability of the hurricane deductible provision. Therefore, the motion to dismiss should not be granted with respect to this aspect of the declaratory judgment.

Finally, the complaint contains sufficient factual allegations that there is a real coverage dispute in this case, and further that QBE has refused to settle the claim in accordance with its obligations under the policy [D.E. 1 at 11 ¶ 32]. Nirvana has alleged that it submitted its claim for hurricane damages, but QBE has yet to promptly investigate, pay and/or settle the claim [*Id.* ¶¶ 7–8, 32]. This failure to act is sufficient for Nirvana to infer the existence

of a dispute as to its right to coverage under the insurance policy. There is a definite, concrete injury alleged in the complaint that satisfies the case or controversy requirement and the Declaratory Judgment Act. *See, e.g., Quadomain Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2007 WL 1424596 (S.D.Fla. May 14, 2007); *Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 504 F.Supp.2d 1307, 1309–12 (S.D.Fla.2007).[2]

Therefore, motion to dismiss Count III of the complaint should be denied.

### III. CONCLUSION & RECOMMENDATION

For the foregoing reasons, it is hereby recommended as follows:

1. **QBE's** Motion to Dismiss Counts II and III of the Complaint [D.E. 1 at 88] should be **GRANTED IN PART and DENIED IN PART** as follows:

a. Count II should be dismissed without leave to amend.

b. Count III should not be dismissed.

2. Pursuant to S.D.Fla.Mag.J.R.4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of any finding in this Report and Recommendation and bar the parties from attacking on appeal the findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d

2. The record at this stage is based only on the pleadings. If the applicability of this provision is ultimately waived, and the validity of the policy conceded, the Court can revisit this claim at a later stage.

404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 10th day of October, 2008.