PER CURIAM.
Preben Olesen [“Olesen”] appeals a partial final judgment entered against him and in favor of General Electric Capital Corporation [“GECC”], in which the trial court dismissed all claims against GECC for failure to state a cause of action and denied Olesen’s ore tenus motion to amend his Second Amended Complaint.
On November 25, 2009, Olesen filed a complaint against Lowndes, Drosdick, Doster, Kantor & Reed Professional Association [“the Lowndes Firm”], attorney *391 Jennifer R. Dixon [“Attorney Dixon”], attorney James Steven Toscano [“Attorney Toscano”], and attorney Terry Cressler Young [“Attorney Young”], [collectively “the Lowndes Defendants”], as a result of the Lowndes Defendants’ representation of Olesen in a guaranty suit filed against him by GECC. In a Second Amended Complaint, Olesen named GECC as an additional defendant. He alleged the following causes of action: Count I — legal malpractice as to the Lowndes Defendants; Count II — fraud as to the Lowndes Defendants; Count III — constructive fraud as to the Lowndes Defendants; Count IV— fraud as to GECC; and Count V — civil conspiracy as to GECC and the Lowndes Defendants.
Olesen’s complaint in this lawsuit alleged the following facts. Olesen was the owner of the Arkansas Bus Exchange Corporation [“ABE”], a private company that was in the business of leasing new and used motor coach vehicles or “buses” and selling or subleasing them to entities for profit. In 2000, GECC offered Olesen a five million dollar ($5,000,000) line of credit to facilitate the leasing of buses through ABE. On June 2, 2000, ABE leased six T2145 Van Hool buses through its credit line with GECC.
Pursuant to an amended lease agreement, commencing August 2, 2002, ABE was to pay GECC twenty-four thousand dollars ($24,000) a month for sixty-one (61) months with a final payment of twenty-eight thousand two hundred twenty-seven dollars ($28,227) for the lease. The total lease obligation to GECC at the commencement of the lease was one million five hundred fifty thousand dollars ($1,550,000). The final payment pursuant to the lease agreement was due in September 2007.
Olesen and his wife, Darla Olesen [“Darla”], were divorced in January 2007. The Lowndes Firm represented Olesen in the divorce. Darla acquired ABE in the divorce.
Olesen moved to the Bahamas and began a new business venture. After Darla took over ABE, ABE made a partial payment of $7,000 to GECC in December 2006 and was not timely in making the January and February 2007 payments, although later those payments were made. Olesen was not aware that the payments had not been made.
At the time ABE went into default, the payments remaining due for the unexpired term of the Lease totaled $287,277. On February 9, 2007, without the knowledge of Olesen, GECC wrote a letter to Luis Pineda e/o E-Z Bus, Inc. [“E-Z Bus”] regarding five 2000 Van Hool T2145 buses E-Z Bus subleased from ABE. GECC notified E-Z Bus that ABE was in default of its Lease with GECC and that pursuant to section (7) of the Consent to Sublease entered between GECC, ABE and E-Z Bus, E-Z Bus should now deliver its monthly lease payments directly to GECC. E-Z Bus complied with this request and made full monthly payments to GECC for the rest of the Lease term.
On February 9, 2007, without the knowledge of Olesen, GECC wrote a letter to Ernest Givens c/o Angelic Luxury Coach, Inc. [“Angelic”] regarding one 2000 Van Hool T2145 bus that Angelic had subleased from ABE. GECC notified Angelic that ABE was in default of its Lease with GECC and pursuant to section (7) of the Consent to Sublease entered between GECC, ABE and Angelic, Angelic should now deliver its monthly lease payments directly to GECC. Angelic complied with this request and made full monthly payments to GECC for the rest of the Lease term.
*392 On or about June 14, 2007, GECC initiated a lawsuit [the “GECC Lawsuit”] against ABE, Darla, and Olesen for default of the Lease. The Lowndes Firm and Olesen became aware of the GECC Lawsuit on or about July 25, 2007, when John Urban, counsel for GECC, was seeking to have someone accept service on behalf of Olesen, who was residing in the Bahamas. According to GECC, as of August 22, 2007, ABE was in arrears $29,118.22.[1]
According to Olesen, the Lowndes Defendants repeatedly advised him that he had no defense to the GECC lawsuit and the only route to take was to pursue a cross-claim judgment against Darla and attempt to collect on it.[2] They never advised him that it would be financially beneficial for him to pay the arrearages.[3] Oles-en theorized that because the Lowndes Firm also represented GECC in other matters and was a “bigger better” client, the Lowndes Defendants conspired with GECC to allow GECC to obtain a judgment of $1,210,662 against Olesen, to which it was not entitled.
On August 30, 2007, GECC filed its First Amended Complaint. The Lowndes Firm filed a Notice of Appearance and Motion for Extension of Time on behalf of Olesen on November 7, 2007. On November 14, 2007, Attorney Young sent a letter to Olesen and requested that he execute a waiver to allow the Lowndes Firm to represent both him and GECC in distinct matters [the “Waiver Letter”] at the same time. Attorney Young wrote that, although they were not representing GECC in the lawsuit against Olesen, they did represent it in other unrelated matters. Olesen insisted that he never executed the Waiver Letter and never gave consent to waive the conflict.
Unbeknownst to Olesen, John Stine, on behalf of GECC, executed a waiver letter [“GECC Waiver Letter”] on December 5, 2007. In a letter addressed to GECC, Dale A. Burket, an attorney with the Lowndes Firm, had written in part:
The purpose of this letter is to request a waiver of a conflict of interest in connection with our law firm’s representation of Mr. Preben Olesen in the above-referenced matter. In this action, GE Electric Capital Corporation (“GE”) is suing Mr. Olesen, Arkansas Bus Exchange Corporation (a business entity awarded to Mr. Olesen’s Former Wife in their *393 divorce), and Mr. Olesen’s Former Wife because of a default with respect to certain financing provided by GE. Mr. Ol-esen is not disputing GE’s claim, but rather will be seeking indemnification and contribution from his Former Wife pursuant to the Final Judgment of Dissolution of Marriage.
We seek your assent to such a waiver subject to the following conditions:
1. Mr. Olesen agrees not to object to our law firm’s continued ability to represent GE or its affiliates on existing and future matters.
2. Our representation of Mr. Olesen will not involve the assertion against GE or any of its affiliates of a claim of fraud, misrepresentation, or other dishonest conduct.
3. Our law firm is representing Mr. Olesen for the sole purpose of defending the referenced litigation and it is understood that GE reserves the right to claim a potential or actual conflict of interest and take appropriate action regarding any other matter in which our law firm may be engaged, or representation by our law firm which is broader than specified in this sentence.
4. Our law firm’s personnel providing services to Mr. Olesen in connection with this matter will not be among those concurrently providing services to GE or a GE affiliate.
5. Mr. Olesen has been informed of the conditions set forth in this letter and has agreed to these conditions by signing, below.
If this request is acceptable to you, please sign this letter and return it to me Thank you for your consideration of this request.
The letter provides “Received and agreed to,” and bears the signature of John Stine “On behalf of General Electric Capital Corporation,” dated “12.5.07.” This letter was not provided to Olesen prior to the GECC Lawsuit, and none of the promises the Lowndes Firm made to GECC regarding Olesen were known to Olesen.
On December 12, 2007, Attorney Young sent Olesen a letter describing for Olesen the reasons the Lowndes Firm should not represent him in the GECC Lawsuit. Attorney Young told Olesen that when the GECC Waiver Letter was requested from GECC, their representative implied to Attorney Toscano that they expected the Lowndes Firm to “cooperate,” which they understood to mean that GECC expected the Lowndes Firm to advance their interests. “I believe that they are expecting us to attempt to sell your interests down the river or advance theirs, neither of which we are comfortable with.” Attorney Young also explained that the attorney for GECC in the GECC Lawsuit had a law partner who “currently is a significant client (client representative) on a major, multi-million dollar matter” of the Lowndes Firm. Attorney Young described this as “an intellectual and possibly a client relations conflict.” The Lowndes Firm did not, however, withdraw from representing Olesen; and, according to Oles-en, repeatedly assured him that, despite GECC’s request, they would protect his interests.
On January 7, 2008, GECC filed a Motion for Summary Judgment and a notice of filing the affidavit of Dale Shores in support of its motion. In his affidavit, Dale Shores, GECC’s vice president, made sworn statements as to amounts due.[4] 01- *395 esen contends that these documents were false because damages were calculated based on the entire contract value, not the unpaid amount, and because there was no disclosure of the amounts GECC had been paid.
The Lowndes Defendants filed Olesen’s Answer, Affirmative Defenses and Cross-Claim. The Affirmative Defenses consisted of one affirmative defense: that Darla was solely responsible for any indebtedness to GECC pursuant to the Final Judgment of Dissolution of Marriage. Olesen claimed that the Lowndes Firm failed to properly plead the affirmative defenses available to Olesen because of their agreement with GECC to “throw Mr. Olesen under the bus.”
GECC’s Motion for Summary Judgment was noticed by GECC for hearing on March 3, 2008. Prior to the hearing, Attorney Dixon went through the GECC records provided at Mr. Shores’s deposition and created a summary of payments made to GECC from the sublessees after the alleged default, which she sent to Attorney Toscano. These totaled $192,029.36. According to Olesen, although the exact amount of arrearages, if any, still remained uncertain, the maximum damages to GECC, after receiving payments from the sublessees, could only be approximately $45,247.64.
The Lowndes Defendants filed nothing opposing summary judgment in advance of the hearing. There was no court reporter at the hearing. The trial court verbally granted GECC’s Motion for Summary Judgment.
The trial court sua sponte set a status hearing for March 20, 2008, based on its own misgivings about the amount of the judgment. The trial court particularly wanted clarification of the sublessee payment issue prior to entering an order. It questioned the parties about the subleases and the continuation of payments under the Lease. When informed, however, that, as of the summary judgment hearing, the only record evidence of amounts due was GECC’s affidavit and that there was no record evidence concerning amounts GECC had been paid, the trial court entered judgment in favor of GECC:
“The Plaintiff shall recover from the defendants, Arkansas Bus Exchange Corporation, Darla M. Olesen, and Preben Olesen, jointly and severally, the principal amount of $1,210,662.54, plus statutory prejudgment interest since March 2, 2007. The Defendant, Preben Olesen’s Motion for Reconsideration is DENIED. The. Court reserves jurisdiction to, upon proper motion, enter an award of attorney fees and costs incurred by the Plaintiff in this matter.” [emphasis added ]
Including attorneys’ fees and costs, the judgment against Olesen totaled $1,462,265.73, with interest accruing at eleven percent per annum. It appears *396 that GECC ended up collecting substantially all of the money payable under the Lease, plus a judgment against Olesen for $1,462,265.73, and, at the conclusion of the lease, recovered all the leased buses.
According to Olesen, the Lowndes Defendants told him that an appeal of the GECC Final Judgment would be futile; hence no appeal was filed. The Lowndes Defendants did not withdraw as counsel of record for Olesen until November 19, 2009.
In this lawsuit, Olesen contended that he became aware that he had multiple viable defenses to the claims of GECC, and that he was entitled to set-offs and credits that would have eliminated or substantially reduced any liability. In his complaint, Oles-en alleged that GECC defrauded the court and him by secretly conspiring with the Lowndes Defendants to not provide him with an effective defense against GECC’s claims, and that GECC defrauded the court and Olesen by sentiently setting in motion an unconscionable scheme calculated to interfere with the judicial system’s ability to fairly adjudicate the lawsuit. The complaint alleged that GECC knew its claims were fraudulent, knew the affidavits filed in support of the summary judgment motion and the motion itself were false and perjurious, knew that the court and Olesen were being deceived, and knew that the judicial process itself was being undermined.
GECC filed a motion to dismiss for failure to state a cause of action. At the hearing below on the motion, GECC made two basic arguments. First, GECC argued that, as alleged in Olesen’s complaint, the fraud that was perpetrated was, as a matter of law, intrinsic, not extrinsic. Therefore, the claim was subject to the one-year limitation in Florida Rule of Civil Procedure 1.540. Olesen responded that the fraud alleged was extrinsic and, thus, not subject to the one-year limitation.
The distinction between extrinsic fraud and intrinsic fraud was discussed in DeClaire v. Yohanan, 453 So.2d 375, 380 (Fla.1984). There, the Florida Supreme Court explained:
Determining the conduct that constitutes intrinsic fraud, which requires action under the rule within one year of the entry of a final judgment, and the conduct that constitutes extrinsic fraud, for which an action may be brought at any time, is the critical issue in the instant case. The cases distinguish between false and misleading information being presented on an issue to be tried and conduct which prevents a party from trying the issue. When an issue is before a court for resolution, and the complaining party could have addressed the issue in the proceeding, such as attacking the false testimony or misrepresentation through cross examination and other evidence, then the improper conduct, even though it may be perjury, is intrinsic fraud and an attack on a final judgment based on such fraud must be made within one year of the entry of the judgment.
The court specifically explained how extrinsic fraud differs from intrinsic fraud, and why no time limit like that applicable to intrinsic fraud applies to extrinsic fraud.
At the outset we must distinguish between extrinsic fraud and intrinsic fraud because only extrinsic fraud may constitute fraud on the court. Extrinsic fraud involves conduct which is collateral to the issues tried in a case. The definition of extrinsic fraud was specifically articulated in United States v. Throckmorton, 98 U.S. 61, 65-66, 25 L.Ed. 93 (1878), in which the United States Supreme Court said:
Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him *397 away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client’s interest to the other side-these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. (Citations omitted.)
Consistent with the general rule, this Court has defined extrinsic fraud as the prevention of an unsuccessful party [from] presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on.
Fair v. Tampa Electric Co., 158 Fla. 15, 18, 27 So.2d 514, 515 (1946). See Black’s Law Dictionary 595 (rev. 5th ed. 1979). In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause. Intrinsic fraud, on the other hand, applies to fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried. This Court, consistent with the general rule, has expressly held that false testimony given in a proceeding is intrinsic fraud. We have stated that
[i]f a judgment was obtained upon false testimony or a fraudulent instrument and the parties were heard, the evidence submitted to and received consideration by the court, then it may be said that the matter has been actually tried, or was so in issue that it might have been tried and the parties are estopped to set up an intrinsic or direct fraud to vitiate the judgment, because the judgment is the highest evidence and cannot be contradicted by the parties to it.
Johnson v. Wells, 72 Fla. 290, 299, 73 So. 188, 191 (1916) (citation omitted).
Id. at 376-77 (emphasis added).
Based upon rule 1.540(b) and DeClaire, Olesen sufficiently alleged conduct amounting to extrinsic fraud. Taking the allegations in the Second Amended Complaint together, as detailed above, Olesen essentially alleged that, despite assurances from the Lowndes Defendants that they would represent him and protect his interests, GECC and the Lowndes Defendants secretly agreed to act together in a way in which Olesen’s viable defense would not be presented to the trial court, including the failure to challenge or contest GECC’s submission of a fraudulent claim supported by a false affidavit as to amounts due and owing, and the Lowndes Defendants’ failure to assert any viable defense. And, without a record of the sublessees’ payments, the trial court could not even address, on its own, the issue of whether the payments impacted the amount Olesen owed. ■
Also, we are not persuaded that Olesen had no defense to the GECC claims and, hence, could not have been damaged by any alleged conspiracy on the part of GECC and the Lowndes Defendants. GECC collected payments directly from the sublessees of the buses after ABE’s default, yet there was no challenge to GECC’s claim that the Stipulated Loss Value was a damage GECC was entitled to recover as a result of ABE’s default. Even if Olesen’s liability under the guaranty were “indefensible,” the issue of wheth *398 er any amounts were due under the lease and calculation of these amounts were critical to Olesen’s representation.
To avoid the claim of extrinsic fraud, GECC asserted what amounts to a conversion theory. The idea is that the extrinsic fraud became intrinsic fraud because the Lowndes Firm’s correspondence put Oles-en on notice of the potential for the fraud on the court. According to GECC, by expressly alleging in his complaint that he was told by the Lowndes Firm of its divided loyalties, the fraud became intrinsic.
For this proposition of law, GECC relies on a single case, Arrieta-Gimenez v. Arrieta-Negron, 551 So.2d 1184 (Fla.1989). This case concerned a dispute between two sets of heirs to the estate of Mr. Arrieta. Appellant was his daughter by his second wife. Appellees, the remaining heirs, were Arrieta’s children by his first wife. A dispute arose over the division of Arrieta’s substantial assets and holdings in Florida and Puerto Rico. The Appellees proposed a settlement to Appellant, which she accepted in 1960, and the matter was resolved by a consent judgment. Twenty-three years later, she filed suit in federal court seeking to undo the settlement based on her contention that Appellees had fraudulently misrepresented or concealed facts material to the settlement. In answering a certified question posed by the federal court of appeal, our supreme court had no difficulty identifying this circumstance as being a case of intrinsic fraud, subject to the one-year limit. The extent of Arrieta’s holdings was the issue litigated and resolved in the lawsuit: “[The] misrepresentation is the type considered to be intrinsic fraud.” Citing to DeClaire, the court said that intrinsic fraud is fraud that occurs during the proceeding such as false testimony, whereas extrinsic fraud is fraud that prevents a party from having an opportunity to represent his case in court. Id. at 1185. The Court said:
We disagree with appellant that the alleged misrepresentation amounts to extrinsic fraud that deprived appellant of the opportunity to present her case in court. Appellant had full access to discovery (in fact, the record reveals that appellant made full use of her discovery rights), and she had every right to reject the settlement offer until she could adequately explore the extent of her father’s holdings in Puerto Rico. Appellant had sufficient opportunity from the outset to discover the fraudulent behavior, and thus bring an action in court either before the settlement offer was made or within the one year time limit expressed in rule 1.540(b).
Id. at 1186.
Contrary to GECC’s reading of Arrieta-Gimenez, it is not the “opportunity to discover the fraud” that determines whether a fraud is intrinsic or extrinsic, it is the nature of the fraud itself. The fraud alleged in Arrieta-Gimenez was typical intrinsic fraud involving the presentation of false facts by a litigant. Once the litigation has concluded, any such falseness inheres in the judgment and only a limited time is given to determine the true facts. Olesen contends that he never got his day in court because his interests were corruptly sold out to the other side by attorneys ostensibly representing him. Assuming for the sake of GECC’s argument that Olesen was put on notice by the Lowndes Defendants that they were going to “throw” his case to benefit GECC, such a fact might go to whether there was fraud, but not the nature of it.
Turning to GECC’s second argument, GECC contended that Olesen’s complaint failed to state a cause of action for civil conspiracy. Olesen countered that he sufficiently stated a cause of action for civil conspiracy against GECC. Civil conspiracy consists of the following elements: “(a) a conspiracy between two or more parties, *399 (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy.” Walters v. Blankenship, 931 So.2d 137, 140 (Fla. 5th DCA 2006).
Based on the allegations in the Second Amended Complaint along with the attached supportive documents, taken as true, and together with the inferences drawn from them in favor of Olesen, as presented above, a trier of fact could have found that GECC and the Lowndes Defendants conspired to and did commit fraud on the court as related to the issue of the amounts due and owing by Olesen under the guaranty, a finding that encompasses the first three elements of civil conspiracy. As for the fourth element, damage, because Olesen alleged both that the Lowndes Defendants failed to effectively contest the amounts due and owing, and that had the Lowndes Defendants effectively done so, they could have limited the amount due and owing by him under the guaranty, a trier of fact could have found that Olesen was damaged as a result of GECC’s and the Lowndes Defendants’ conspiracy to commit fraud on the court. As such, the allegations of the Second Amended Complaint were sufficient.
Accordingly, we reverse the trial court’s dismissal of Counts IV and V of Olesen’s Second Amended Complaint for failure to state a cause of action.[5]
REVERSED and REMANDED.
GRIFFIN, PALMER and WALLIS, JJ., concur.

. In an e-mail sent to Olesen, dated August 22, 2007, Alberto D. Lopez, the Portfolio Collections Specialist with GECC, wrote:
I am contacting you in regards to your guarantee for Arkansas Bus Exchange. I am sure you know of the situation of the account being delinquent and past due for the amount of $29,118.22 for approximately a month and a half of payments. I need to speak with you immediately on this matter in order to get it resolved. Please contact me at your earliest convenience, thanks

. A letter addressed to Olesen, dated August 3, 2007, from Attorney Young explained:
[B]oth of these actions seem indefensible from your point of view as it relates to the lenders. However, it does seem that you need to get cross-claim judgments against Darla for her obligations under the Final Judgment of Dissolution of Marriage to indemnify and hold you harmless.

.Also, in a letter addressed to Olesen, dated November 14, 2007, Attorney Young wrote in part:
Obviously, we are not representing them in this action since John L. Urban, Esquire, is. However, because we do have other work that we are prosecuting on their behalf, there is a facial conflict of interest; and we need to make sure that you have no objection to us representing your interests in this case while at the same time we are representing GE Capital in other cases unrelated to you. Of course, for all practical purposes, you have no defense to their action other than to seek indemnity and contribution from Darla for the obligation pursuant to the terms of the Final Judgment.

. In his affidavit filed in support of GECC’s motion for summary judgment, Dale Shores stated in part:
1. My name is Dale Shores. I am Vice President of General Electric Capital Corporation. The following statements are *394 true and correct based upon my personal knowledge and upon the books and records of GENERAL ELECTRIC CAPITAL CORPORATION (hereinafter "GECC”), of which I am the custodian. I am authorized by GECC to make this affidavit.
2. On June 2, 2000, GECC entered into a Commercial Transportation Lease Agreement with ARKANSAS BUS EXCHANGE CORPORATION (hereinafter "Arkansas Bus”) (as amended, the "Lease”) setting forth the terms and conditions upon which six (6) 2000 Van Hool coach vehicles (the "Vehicles”) would be leased to Arkansas Bus. A true and correct copy of the Lease is attached to the First Amended Complaint as Exhibit "A”.
3. Pursuant to the Lease, Arkansas Bus agreed to make eighty-four (84) monthly payments in the amount of $28,227.00 per month, commencing on June 2, 2000.
4. The Lease was amended on or about September 30, 2002, pursuant to which Arkansas Bus’ monthly Lease payments were modified to $24,000.00 per month with a final payment of $28,227.00 due in September 2007. A true and correct copy of the Lease amendment is attached to the First Amended Complaint as Exhibit "Al”.
5. The failure to make any monthly rent payment when due constitutes an Event of Default under the Lease See First Amended Complaint as Ex. A, ¶ 17.
6. The Lease provides that upon an Event of Default GECC may recover from Arkansas Bus, among other things, all damages sustained as a result of the default, including but not limited to the full amount of the Stipulated Loss Value of the Vehicles (as defined in the Lease), together with all rent and other amounts due and payable. See First Amended Complaint Ex. A, ¶ 17.
7. The Lease also provides that GECC may collect from Arkansas Bus "all costs of collection and repossession including attorneys' fees and collection fees.” See First Amended Complaint Ex. A, ¶ 17.
8. As additional security for Arkansas Bus’ obligations under the Lease, and to induce GECC to enter into the Lease with Arkansas Bus, the Guarantors each executed an Individual Guaranty in favor of GECC agreeing to "primary, absolute, continuing and unconditional” liability for all amounts due to GECC under the Lease. See Individual Guaranty of DARLA M. OLESEN (hereinafter "D. Olesen”) and PREBEN OLESEN (hereinafter "P. Olesen”) (copies of which are attached to the First Amended Complaint as Exhibits "B” and "C”).
9. The Guarantors also contractually waived any requirement that GECC first enforce its rights against Arkansas Bus or any other person or collateral. See First Amended Complaint Ex. B; C.
10. The Guarantors also agreed "to pay upon demand all losses, costs, attorneys’ fees and expenses which may be suffered by [GECC] by reason of [Arkansas Bus'] default or default of [either of the Guarantors].” See First Amended Complaint Ex. B; C.
11. Arkansas Bus failed to make its payment for December 2006, instead paying only $7,000 of the $24,000.00 due and owing.
12. Arkansas Bus has failed to make any payment for January 2007 or any month thereafter as required under the Lease.
13. Following these defaults of the Lease, GECC demanded that Arkansas Bus cure these defaults, however Arkansas Bus refused or otherwise failed to cure those defaults.
14. Thereafter, GECC contacted D. Olesen and P. Olesen, the Guarantors of the Lease, to notify them that Arkansas Bus was in default under the Lease and to demand payment of all amounts due under the Lease.
15. However, despite numerous communications by phone and e-mail, the Guarantors have refused to comply with their obligations under their duly executed Individual Guarantees.
16. By letters dated March 2, 2007, GECC again contacted Arkansas Bus, D. Olesen and P. Olesen, notifying them of the defaults under the Lease and their Guarantees and demanding immediate payment of all amounts due and owing to GECC. See letters dated March 2, 2007 (collectively attached to the First Amended Complaint as Exhibit "D").
17. However, Arkansas Bus, D. Olesen and P. Olesen ignored these demands as well as have refused to comply with their contractual obligations.
18. As a result of the Arkansas Bus' default and refusal to honor its contractual obligations, Arkansas Bus is, and continues to be, in default of the Lease, and all amounts due and owing are still outstanding and unpaid.
19. At the time of the default notice on March 2, 2007, the amount due under the Lease included past due rental of *395 $65,000.00, plus accrued late charges in the amount of $3,6000.00, together with the Stipulated Loss Value of the Vehicles in an amount of $1,142,062.54, together with costs of suit, including attorneys fees, and all other amounts which are justly due GECC.
20.Pursuant to the Guarantors’ individual, absolute and unconditional Guarantees, the Guarantors are personally and primarily liable for all amounts due and owing to GECC.
21. Notwithstanding, the Guarantors have failed to satisfy their contractual obligations to GECC pursuant to the Individual Guaranty that each Guarantor executed in an effort to induce GECC to enter into the Lease. See First Amended Complaint Ex. B; C.
22. The factual statements contained in the First Amended Complaint and the exhibits attached thereto are true and correct to the best of my knowledge.

. This ruling moots Olesen’s claim of error as to the denial of his ore tenus motion to amend,